**Reversed and Rendered and Opinion filed August 7, 2018.**



In The

# Fourteenth Court of Appeals

### NO. 14-17-00563-CV

## ALIEF INDEPENDENT SCHOOL DISTRICT (AISD), Appellant

### V.

## RAYMOND BRANTLEY, Appellee

**On Appeal from the 334th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2015-32769**

## O P I N I O N

This is an employment discrimination case. Alief Independent School District (AISD) brings this interlocutory appeal challenging the trial court's denial of AISD's plea to the jurisdiction[1] as to Raymond Brantley's hostile work environment and discrimination claims under the Texas Commission on Human Rights Act (the Act).[2]

---

[1] *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) (allowing interlocutory appeal from trial court's grant or denial of a plea to the jurisdiction by a governmental unit).

[2] Tex. Lab. Code §§ 21.001–.556. Under the Act, "[a]n employer commits an unlawful

Concluding that AISD is entitled to governmental immunity because Brantley did not establish a prima facie case of hostile work environment and AISD established a legitimate, nondiscriminatory reason for terminating Brantley's employment that Brantley did not refute, we reverse and render judgment that Brantley take nothing by way of his claims against AISD under the Act.

## *Background*

Brantley, an African American male, was hired as AISD's Director of Risk Management upon the recommendation of Dr. Rose Benitez. Benitez was Brantley's direct supervisor, and Charles Woods was Brantley's "second-line supervisor up the chain of command." Approximately three years after Brantley was hired, Benitez issued a memorandum addressing some concerns about Brantley's conduct. Brantley denied the allegations in a memorandum in response to Benitez.

Approximately two years later, Woods issued a memorandum to Brantley regarding a phone conversation between the two of them. Woods informed Brantley, "[Y]ou are directed to keep your interactions to a calm and professional manner in the future. The type of verbal outburst you exhibited to me will not be tolerated in the future."

Later that year, Benitez sent a memorandum to AISD's superintendent asking AISD not to renew Brantley's employment contract for the 2014-2015 school year for "[f]ailure to follow district policy and procedures," insubordination, and unprofessional conduct. The superintendent approved the recommendation, and Brantley's

---

employment practice if because of race, color, disability, religion, sex, national origin, or age the employer . . . discharges an individual or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." *Id*. § 21.051. The Texas Supreme Court also has recognized a claim for hostile work environment under the Act. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018).

employment was terminated as of the end of the 2013-2014 school year.

Brantley filed a discrimination charge with the Texas Workforce Commission (TWC) on August 22, 2014, contending that he was subjected to a hostile work environment and race and gender discrimination, beginning in August 2011 and culminating in the nonrenewal of his employment contract in April 2014. Brantley made the following allegations:

- Benitez used a racial slur to refer to him in August 2011 and "continuously degraded [Brantley] in public and private."

- Benitez removed Brantley from the position of Director of the Wellness Program and gave the position to a white female in January 2012.

- Benitez and three other females falsely accused Brantley of yelling at Benitez and being disrespectful in the Human Resources Department meeting in November 2013. A coworker told Brantley after the death of Treyvon Martin, "Make sure you don't wear a hoodie, those White Mexicans will stand their ground and shoot you dead."[3]

- Brantley was placed on administrative leave in April 2014, and his employment was terminated two days later. He was replaced with a Hispanic female, leaving no African American directors or any males in the Human Resources Department. Thereafter, Benitez "made false and derogatory statements about [Brantley] to others."

After receiving a "right to sue" letter from the TWC, Brantley filed the underlying suit. He brought causes of action for violations of the Texas Constitution and under the Act. AISD filed a combined plea to the jurisdiction and traditional and no-evidence motion for summary judgment on the basis that the trial court lacked jurisdiction over Brantley's claims because Brantley (1) failed to exhaust his administrative remedies in a timely manner with regard to his hostile work environment

---

[3] Treyvon Martin was a 17-year-old African American who was fatally shot by a neighborhood watch volunteer.

claims; (2) cannot establish the elements of his hostile work environment claims or show his race or gender was a motivating factor in the nonrenewal of his employment contract; (3) failed to exhaust his administrative remedies as to his constitutional claims and cannot establish essential elements of these claims; and (4) can present no evidence to support essential elements of each of his claims. The trial court granted relief in favor of AISD as to Brantley's constitutional claims but denied it as to his claims under the Act.

*Discussion*

AISD challenges the trial court's denial of the plea regarding Brantley's hostile work environment and discrimination claims.[4] As a governmental unit, AISD is immune from suit absent an express waiver of governmental immunity. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018) ("Governmental units, including school districts, are immune from suit unless the state consents."); *see also Tooker v. Alief ISD*, 522 S.W.3d 545, 551 (Tex. App.—Houston [14th Dist.] 2017, no pet.). The Act provides a limited waiver of that immunity when a governmental unit has discriminated in any manner against any employee on the basis of race, gender, or other protected classification, or has retaliated against the employee for opposing or complaining of such discrimination. *Harris Cty. Hosp. Dist. v. Parker*, 484 S.W.3d 182, 191 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing Tex. Lab. Code §§ 21.051 and 21.055 and *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 660 (Tex. 2008) (holding that "the [Act] clearly and unambiguously waives immunity")).

The Act's immunity waiver applies only if the plaintiff alleges a violation within

---

[4] In Brantley's live petition, he asserted only a general claim for violation of the Act. On appeal, he acknowledges claims for hostile work environment and race and gender discrimination. We limit our discussion accordingly.

the scope of the statute. *Clark*, 544 S.W.3d at 770; *Parker*, 484 S.W.3d at 191. If the plaintiff does not sufficiently plead facts that state a claim under the Act, the governmental unit may challenge the pleadings with a plea to the jurisdiction. *Parker*, 484 S.W.3d at 191. The governmental unit may also use a plea to the jurisdiction to challenge the existence of jurisdictional facts. *Id*.

Immunity from suit may be asserted through a plea to the jurisdiction or other procedural vehicle, such as a motion for summary judgment. *Clark*, 544 S.W.3d at 770. When a jurisdictional plea challenges the plaintiff's pleadings, we determine whether the pleadings, construed in the plaintiff's favor, allege facts sufficient to affirmatively demonstrate the trial court's jurisdiction to hear the case. *Clark*, 544 S.W.3d at 770; *Parker*, 484 S.W.3d at 191 (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)). Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law we review de novo. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016).

If the plaintiff pleaded facts making out a prima facie case and the governmental unit instead challenges the existence of jurisdictional facts, we consider the relevant evidence submitted. *Parker*, 484 S.W.3d at 191. Generally, the standard mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c). *Sampson*, 500 S.W.3d at 384. If the plaintiff's factual allegations are challenged with supporting evidence necessary to consideration of the plea to the jurisdiction, to avoid dismissal, the plaintiff must raise at least a genuine issue of material fact to overcome the challenge to the trial court's subject matter jurisdiction. *Id*. When the evidence submitted to support the plea implicates the merits of the case, we take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving

any doubts in the plaintiff's favor.[5] *Id.*

Because the legislature intended for state law to correlate with federal law in employment discrimination cases, we may look to analogous federal cases when applying the Act. *Parker*, 484 S.W.3d at 191 (citing Tex. Lab. Code § 21.001 and *Wal–Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003)). The legislature has mandated that all statutory prerequisites to suit are jurisdictional requirements in suits against governmental entities. *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 510 (Tex. 2012) (citing Tex. Gov't Code § 311.034); *Metro. Transit Auth. of Harris Cty. v. Douglas*, 544 S.W.3d 486, 492 (Tex. App.—Houston [14th Dist.] 2018, pet. filed). The Act requires a person claiming to be aggrieved by an unlawful employment practice to file a charge with the TWC within 180 days of the alleged unlawful employment practice. Tex. Lab. Code § 21.201(a), (g). Accordingly, filing a timely charge with the TWC is a jurisdictional prerequisite to filing suit for unlawful employment practices against a governmental entity. *Chatha*, 381 S.W.3d at 511–12, 514; *see also Douglas*, 544 S.W.3d at 492.[6]

---

[5] We have expressly held that a trial court's subject matter jurisdiction cannot be challenged in a no-evidence motion for summary judgment, because "[p]ermitting [such a] challenge [would] improperly shift[] the jurisdictional evidentiary burdens—effectively requiring the [plaintiff] to fully marshal [his] evidence simply to establish jurisdiction and eliminating any burden on [the movant] to disprove jurisdiction through summary judgment evidence." *Lorence v. Morequity, Inc.*, No. 14-15-00177-CV, 2016 WL 3213314, at *2 (Tex. App.—Houston [14th Dist.] June 9, 2016, no pet.) (mem. op.); *Thornton v. Ne. Harris County MUD 1*, 447 S.W.3d 23, 40 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). When the movant does not present evidence disproving jurisdiction, a jurisdictional plea may not be granted unless the pleadings affirmatively negate jurisdiction. *Lorence*, 2016 WL 3213314, at *2.

[6] Alternatively, the charge may be filed with the EEOC. *Chatha*, 381 S.W.3d at 504 n.4. Other requirements under the Act to exhaust administrative remedies are to (1) allow the TWC 180 days to dismiss or resolve the complaint, and (2) file suit in district court within 60 days of receiving a right-to-sue letter from the TWC and no later than two years after the complaint. Tex. Lab. Code §§ 21.208, .254, .256; *see also Douglas*, 544 S.W.3d at 492 n.6.

## I. Did Brantley Exhaust His Administrative Remedies as to Certain Claims before Filing Suit?

AISD argues that Brantley waived his hostile work environment claims by failing to exhaust his administrative remedies as to those claims. Before a plaintiff can maintain a suit for employment discrimination under the Act, the plaintiff first must file a charge of employment discrimination with the TWC or EEOC. *Parker*, 484 S.W.3d at 192 (citing Tex. Lab. Code § 21.201, and *Chatha*, 381 S.W.3d at 503).

### A. Are Brantley's Claims Time-Barred?

AISD initially challenges whether Brantley timely filed his discrimination charge.[7] The charge "must be filed not later than the 180th day after the date the alleged unlawful employment practice occurred." Tex. Lab. Code § 21.202(a). Section 21.202's administrative filing requirement is "a mandatory statutory requirement that must be complied with before filing suit," and claims against governmental entities that are not timely filed are jurisdictionally barred. *Parker*, 484 S.W.3d at 193 (quoting *Chatha*, 381 S.W.3d at 514). Each discrete incident of discrimination constitutes a separate actionable unlawful employment practice. *Id*. Discrete discriminatory acts are not actionable if time-barred, and each discrete discriminatory act starts a new clock for filing charges alleging that act. *Id*. Discrete acts that fall within the statutory time period do not make acts that fall outside the time period timely. *Id*. However, because a hostile work environment generally consists of multiple discriminatory acts over a period of time, the charge alleging a hostile work environment must be filed only within the statutory window of at least one of the acts that contributed to the hostile work environment. *Id*. at 195. If the charge is timely filed as to at least one of the acts that contributed to the hostile work environment, then the court may consider all of the acts

---

[7] AISD challenges the timeliness of the charge as to Brantley's hostile work environment claims only, not as to his race and gender discrimination claims.

that are alleged to have contributed to the hostile environment, even though some of them may have taken place outside of the statutory window. *Id*.

AISD contends Brantley's hostile work environment claim is time-barred because all of the alleged acts of discrimination detailed in the charge supporting a hostile work environment claim occurred more than 180 days before Brantley filed his claim. Brantley filed his charge on August 22, 2014. Brantley alleged in his charge that discrimination took place between August 2011 and April 2014, and he listed several specific acts within the 180-day statutory window: (1) his placement on administrative leave and termination of his employment in April 2014, (2) his thereafter being replaced with a Hispanic female, leaving no African American directors or any males in the Human Resources Department, and (3) Benitez afterwards making "false and derogatory statements about [Brantley] to others."

Brantley did not specifically state in his charge that these actions contributed to a hostile work environment. Liberally construing his charge, however, his hostile work environment claims can be read to encompass these actions.[8] *See id*. Because Brantley alleged in his charge acts of discrimination that purportedly contributed to a hostile work environment within the 180-day window, his discrimination charge was timely as to the hostile work environment claims. *See id*.

### B. Did Brantley Exhaust TWC Administrative Remedies As To Certain Claims?

AISD also alleges Brantley failed to exhaust administrative remedies as to some of his hostile work environment claims because his lawsuit references certain acts that

---

[8] AISD argues that the allegations of discrimination forming the basis of Brantley's hostile work environment claims are untimely discrete acts that fall outside the 180-day window and are time-barred. In *Parker*, we recognized that "each discrete discriminatory act starts a new clock for filing charges alleging that act." 484 S.W.3d at 193. But a charge alleging a hostile work environment must be filed only within the statutory window *of one of the acts* that purportedly contributed to the hostile work environment. *Id*. at 195.

were not listed in his discrimination charge. A lawsuit under the Act is limited to claims made in the charge or complaint filed with TWC and factually related claims that can reasonably be expected to grow out of the TWC's investigation. *Santi v. Univ. of Tex. Health Sci. Ctr. at Houston*, 312 S.W.3d 800, 805 (Tex. App.—Houston [1st Dist.] 2009, no pet.). In reviewing a claimant's discrimination charge, we should construe it with "utmost liberality," although the charge must contain an adequate factual basis so that it puts the employer on notice of the existence and nature of the charges. *City of Sugar Land v. Kaplan*, 449 S.W.3d 577, 582 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Santi*, 312 S.W.3d at 805. "The crucial element of a charge of discrimination is the factual statement contained" in the administrative complaint. *Santi*, 312 S.W.3d at 805 (quoting *Preston v. Tex. Dep't of Family & Prot. Servs.*, 222 Fed. App'x 353, 356 (5th Cir. 2007) ("[A] charge is sufficient when . . . sufficiently precise to identify the parties, and to describe generally the action or practices complained of.")).

In his first amended petition, Brantley alleged for the first time that Woods contributed to a hostile work environment in several ways. Even though specific acts by Woods are not mentioned in Brantley's discrimination charge, the charge includes an adequate factual basis to put AISD on notice that Brantley was complaining of discrimination based upon his race and gender resulting in a hostile work environment. In his charge, Brantley checked the boxes for "cause of discrimination based on" race, gender, and "other," noting "hostile environment." Brantley complained that his employment was terminated after he, the only African American human resources director, was subjected at work to being called a racial slur and to other comments about his race, being "degraded . . . in public and private," losing a position to a white female, and then losing his job to a Hispanic female.

We conclude the trial court does not lack jurisdiction over the claim merely because Brantley did not describe every instance that purportedly contributed to a

hostile work environment—Brantley included allegations of discrimination in his charge that generally described the actions or practices about which Brantley complains. *See id.* at 806 (holding a discrimination charge that described "generally the action or practices complained of" provided an adequate factual basis to put the defendant on notice that the plaintiff was complaining of discrimination based on gender). We overrule AISD's first issue.

## II. Did Brantley Demonstrate a Prima Facie Case of Hostile Work Environment?

AISD contends that Brantley did not establish the prima facie elements of his hostile work environment claims based on his race and gender. To establish a hostile work environment claim, Brantley must show (1) he belongs to a protected group; (2) he was subject to unwelcome harassment; (3) the harassment complained of was based on race or gender; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Clark*, 544 S.W.3d at 771; *Parker*, 484 S.W.3d at 197. When the alleged harassment is committed by the plaintiff's supervisor, the plaintiff need only satisfy the first four elements. *Parker*, 484 S.W.3d at 197.

A workplace environment is hostile when it is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment. *Id*. Whether an environment is objectively hostile or abusive is determined by considering the totality of the circumstances. *Id*. (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Although no single factor is required, courts look to (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating as opposed to a mere offensive utterance; (4) whether it unreasonably interferes with an employee's work performance; and (5)

whether the complained of conduct undermines the plaintiff's workplace competence. *Id*. Mere utterance of an epithet that engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to create a hostile work environment. *Id*. Conduct must be extreme enough to amount to a change in the terms and conditions of employment. *Id*. (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

AISD contends that Brantley failed to establish a prima facie case of hostile work environment discrimination because the evidence shows Brantley was not subjected to unwelcome harassment based on race or gender that affected a term, condition, or privilege of his employment. *See id*. at 198. AISD asserts specifically that the alleged conduct was infrequent, not severe, and not threatening, so it did not affect a term, condition, or privilege of Brantley's employment.

Brantley contends that there is direct evidence "that he was systematically harassed because of his race and gender" by being (1) falsely accused of disrespectful behavior and mistakes, (2) called a racial epithet, (3) told that the female employees were afraid of him because he was "tall, Black and bald," (4) told by a coworker that he might be shot if he wore a hoodie, (5) paid less than white, female employees, and (6) "stripped of his duties."[9] Brantley did not cite the record to this evidence in his argument.[10] But even if he had, Brantley has not shown how these actions—even those comments directed toward his race and gender—were objectively severe or pervasive

---

[9] Brantley does not elaborate on what he means by being stripped of his duties. Presumably, he refers to duties that he referenced in his statement of facts in his appellate brief related to a wellness program that he created and related to open enrollment. He presented evidence that these duties were taken away and given to white female coworkers.

[10] Brantley cited the record in his statement of facts but not in support of his argument. *See* Tex. R. App. P. 38.1 (requiring brief to contain clear and concise argument with appropriate citations to authorities and the record).

enough to affect a term, condition, or privilege of employment. *See id.*[11] Moreover, as to Brantley's allegations that he was falsely accused of disrespectful behavior and mistakes and stripped of his duties, Brantley has not pointed to any evidence that these actions were racially motivated, based on his gender, or part of a pattern of race or gender-based harassment. *See Barnes v. Prairie View A & M Univ.*, No. 14-15-01094-CV, 2017 WL 2602723, at *3 (Tex. App.—Houston [14th Dist.] June 15, 2017, pet. denied) (mem. op.). We have found no precedent to support such an inference. *See id*.

Because the record includes evidence negating an essential element of a hostile work environment—that Brantley was subjected to race or gender based harassment that affected a term, condition, or privilege of his employment—and Brantley did not raise a genuine issue of material fact regarding that element, the trial court erred in denying AISD's plea to the jurisdiction on this claim. *See Barnes*, 2017 WL 2602723,

---

[11] In *Parker*, we held the plaintiff failed to establish a prima facie case of race-based hostile work environment despite the defendant's derogatory comments regarding the plaintiff's race, blaming the plaintiff for problems unrelated to performance, screaming and yelling at him, writing him up for poor performance, lowering his performance evaluation, and scrutinizing, micromanaging, and criticizing him. 484 S.W.3d at 198 (citing *Kang v. Bd. of Supervisors of La. State Univ.*, 75 Fed. App'x 974, 975–77 (5th Cir. 2003) (holding allegations including poor performance evaluation; being "written up" for "unacceptable conditions" in one of plaintiff's research areas; receiving a less-than-average pay raise resulting in plaintiff being the lowest paid professor in department; and being criticized at a faculty meeting in front of plaintiff's peers were not sufficiently severe or pervasive to alter the conditions of employment and create a hostile work environment), and *Cole v. Pearland Indep. Sch. Dist.*, No. 4:11–CV–00211, 2013 WL 4494423, at *8 (S.D. Tex. Mar. 21, 2013) (holding plaintiff's allegations that she was repeatedly harassed and abused; falsely reprimanded and given bad and unfair evaluations; verbally intimidated, threatened, and spoken to in a derogatory manner by one supervisor; belittled; and had her work scrutinized "carefully" did not establish that the harassment affected a term, condition, or privilege of employment)); *see also In re Parkland Health & Hosp. Sys. Litig.*, No. 05-17-00670-CV, 2018 WL 2473852, at *9 (Tex. App.—Dallas June 4, 2018, no pet. h.) (mem. op) (holding plaintiff's allegations supporting his hostile work environment claim were not so severe or pervasive that they affected a term, condition or privilege of employment when claim was based on allegations of anonymous threats and phone calls, two racial slurs directed at the plaintiff, a confrontation with the plaintiff without evidence it was based on his race or in response to a protected activity, and a single episode of discipline); *Barnes v. Prairie View A & M Univ.*, No. 14-15-01094-CV, 2017 WL 2602723, at *3 (Tex. App.—Houston [14th Dist.] June 15, 2017, pet. denied) (mem. op.) (holding comments purportedly based on race were not "objectively severe or pervasive enough to affect a term, condition, or privilege of employment").

at *3. We sustain AISD's second issue.

### III.    Has Brantley Raised a Pay Discrimination Claim?

AISD argues that Brantley asserted for the first time in his response to AISD's plea to the jurisdiction that he was the victim of discrimination based on pay. AISD contends that Brantley could not raise this claim for the first time in his response because he did not raise it in his discrimination charge or his live petition. Brantley agrees, as he has not raised a separate claim of disparate pay. Accordingly, we overrule AISD's third issue.

### IV.    Did AISD Establish a Legitimate, Nondiscriminatory Reason for Terminating Brantley's Employment, and Did Brantley Present Evidence of Pretext?

As to Brantley's race and gender discrimination claims, AISD argues that it has rebutted the presumption of discrimination in this case by producing evidence of a legitimate nondiscriminatory reason for terminating Brantley's employment and Brantley did not meet his burden to present evidence that the reasons were pretextual. Discrimination cases under the Act can be established with either direct or circumstantial evidence. *Clark*, 544 S.W.3d at 782; *Hartranft v. UT Health Sci. Ctr.-Houston*, No. 01-16-01014-CV, 2018 WL 3117830, at *11 (Tex. App.—Houston [1st Dist.] June 26, 2018, no pet. h.) (mem. op.). The three-part burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), enables an employee to establish discrimination with circumstantial evidence.[12] *Clark*, 544 S.W.3d at 782; *Hartranft*, 2018 WL 3117830, at *11. If the employee can establish a prima facie case of discrimination, a rebuttable presumption of discrimination arises, which can alone sustain a discrimination claim.[13] *Clark*, 544 S.W.3d at 782; *Hartranft*,

---

[12] Brantley concedes that he does not have direct evidence of discrimination.

[13] Brantley argues AISD waived any argument that Brantley failed to establish a prima facie case of discrimination. But AISD does not raise such a challenge on appeal and in fact presumes for

2018 WL 3117830, at *11. But the employer can defeat this presumption merely by producing evidence of a legitimate, nondiscriminatory reason for the disputed employment action. *Clark*, 544 S.W.3d at 782; *Hartranft*, 2018 WL 3117830, at *11. Once rebutted, the presumption disappears, and an employee lacking direct evidence cannot prove a statutory violation without evidence that the employer's stated reason is false and a pretext for discrimination. *Clark*, 544 S.W.3d at 782; *Hartranft*, 2018 WL 3117830, at *11. In both direct and circumstantial evidence cases, the burden of persuasion remains at all times with the employee. *Clark*, 544 S.W.3d at 782; *Hartranft*, 2018 WL 3117830, at *11.

To prevail on a claim of discrimination in the absence of direct evidence, the plaintiff must establish that he (1) is a member of a protected class, (2) was qualified for his position, (3) was subject to an adverse employment decision, and (4) was treated less favorably than similarly situated persons not in the protected class. *Tooker*, 522 S.W.3d at 551. Presuming without deciding that Brantley has established a prima facie case of discrimination with regard to his termination, AISD contends that it produced evidence of legitimate, nondiscriminatory reasons for Brantley's termination, rebutting any presumption of discrimination. AISD further argues that Brantley did not present evidence that AISD's stated reason for his termination was pretextual; therefore, Brantley has not stated a claim that waives AISD's governmental immunity from suit.

AISD points to the following evidence presented below and referenced in its plea that it terminated Brantley's employment based on legitimate, nondiscriminatory reasons: (1) Brantley failed to follow AISD's policies and procedures and engaged in insubordination and unprofessional conduct over the course of several years; and (2) Brantley failed to correct his negative behavior after being given directives and

---

purposes of its argument that Brantley established a prima facie case of discrimination.

opportunities to do so. We have held that failing to follow an employer's policies and procedures, failing to respond positively to disciplinary intervention, and behaving insubordinately are all legitimate, nondiscriminatory reasons for terminating employment. *See Navy v. Coll. of the Mainland*, 407 S.W.3d 893, 902–03 (Tex. App.— Houston [14th Dist.] 2013, no pet.); *see also Parker*, 484 S.W.3d at 199-200 (holding that an employee's violation of corporate policies was a legitimate, nonretaliatory reason for employee's termination). Because AISD presented legitimate, nonretaliatory reasons for terminating Brantley's employment, the burden shifted back to Brantley to show either (1) the stated reasons were a pretext for discrimination, or (2) even though the reasons were true, discrimination was another "motivating" factor. *See Clark*, 544 S.W.3d at 783; *Parker*, 484 S.W.3d at 200. When, as here, the jurisdictional evidence rebuts the prima facie case, sufficient evidence of pretext must exist to survive the jurisdictional plea. *See Clark*, 544 S.W.3d at 783.

AISD contends that Brantley failed to point to evidence showing pretext in his response to the plea. Brantley argues on appeal that he presented the following evidence showing pretext: (1) the directives and memoranda issued to Brantley by Woods and Benitez were unfounded and were temporally remote from Brantley's termination; (2) no employee ever filed a formal grievance against Brantley; (3) Brantley was never given a reason for his termination; (4) Benitez falsely represented that Brantley improperly obtained a donation from a vendor; and (5) Benitez falsely represented that Brantley improperly recommended putting a teacher on medical restriction or leave. But in his response to AISD's plea, Brantley did not point to evidence showing pretext as to his gender and race discrimination claims. His entire argument as to these claims in his response follows:

> Plaintiff claims that he is a target of illegal Gender and or Race discrimination claim. There is no evidence that Benitez hired or prompted to be hired, any Black Male in AISD's HR unit under her charge. Instead,

15

Benitez placed a lesser qualified Hispanic female to take Brantley's position, and she herself indulged in the grossest and rudest of behavior according to Brantley's testimony. Much of her obnoxious behavior was in the presence of her ex-sister-in-law and friend. . . . Brantley was called by Benitez a stupid [n-word], bilingually, an[d] Army nut, told to shut up, and the recipient of various other obnoxious statements. That the statements were not isolated, but streaming from Benitez, certainly makes her motive a matter of evidence and subject to proof.

Brantley not only failed to refer the trial court to any evidence in support of this argument, but also, he has not shown how such evidence establishes pretext or that gender or race was a motivating factor in his termination. To carry his burden, Brantley was required to rebut each nondiscriminatory reason articulated by AISD. *See Navy*, 407 S.W.3d at 900-01. Brantley did not point to evidence below that rebuts the evidence presented by AISD that Brantley failed to follow AISD's policies and procedures and engaged in insubordination and unprofessional conduct over the course of several years and that Brantley failed to correct his negative behavior after being given directives and opportunities to do so. *See id*. Nor did he point to evidence that discrimination was another motivating factor in his termination, despite his allegations about Benitez. *See Parker*, 484 S.W.3d at 200. Moreover, he waived any argument that the evidence referenced in his appellate brief establishes pretext by failing to raise it in response to AISD's plea. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993) ("[I]ssues a non-movant contends avoid the movant's entitlement to summary judgment must be expressly presented by written answer to the motion or by other written response to the motion.").

We conclude that AISD presented evidence rebutting the presumption of discrimination in this case by producing evidence of legitimate nondiscriminatory reasons for terminating Brantley's employment and Brantley failed to present evidence of pretext. The trial court therefore erred in denying AISD's plea to the jurisdiction as to those claims. *See Parker*, 484 S.W.3d at 200-01. We sustain AISD's fourth issue.

### Conclusion

We conclude that Brantley exhausted his administrative remedies as to his hostile work environment claims but failed to establish a prima facie case that he was subjected to a hostile work environment. We also conclude that AISD rebutted the presumption of race and gender discrimination in this case by producing evidence of legitimate nondiscriminatory reasons for terminating Brantley's employment and Brantley did not meet his burden to present evidence that the reason for his termination was pretextual. Accordingly, the trial court erred in denying AISD's plea to the jurisdiction as to Brantley's hostile work environment and race and gender discrimination claims. We reverse the trial court's ruling and render judgment that Brantley take nothing by way of these claims.


/s/    Martha Hill Jamison
Justice


Panel consists of Justices Boyce, Jamison, and Brown.