# Court of Appeals
## Tenth Appellate District of Texas

10-22-00282-CV

Dr. Leonard Bright,
Appellant

v.

Texas A&M University,
Appellee

On appeal from the
272nd District Court of Brazos County, Texas
Judge John L. Brick, presiding
Trial Court Cause No. 20-000811-CV-272

CHIEF JUSTICE JOHNSON delivered the opinion of the Court.

## MEMORANDUM OPINION

Dr. Leonard Bright appeals from the trial court's order granting Texas A&M University's plea to the jurisdiction. We will affirm.

## I. Background

Dr. Bright is a tenured associate professor in the Department of Public Service and Administration (PSAA) in the Bush School of Government and Public Service at Texas A&M University (TAMU). In May 2018, Dr. Bright

applied for promotion to full professor in the Bush School. His promotion application was denied, and he filed suit against TAMU alleging causes of action for racial discrimination, retaliation, and hostile work environment.

## A. TAMU Promotion Process

TAMU University Rule 12.01.99.M2 University Statement on Academic Freedom, Responsibility, Tenure, and Promotion sets out the policies for promotion at TAMU. Section 4.4 of that Rule designates the categories of performance as (1) teaching, (2) scholarship or research and its publication, and (3) service. Section 4.4.2 of the Rule allows the faculty and administrators of each college to develop written guidelines describing the evaluation criteria employed in the unit consistent with TAMU criteria and procedures. Section 4.4.3.3 provides that in addition to criteria developed in the college, the minimum requirements to be met by individuals being considered for promotion to full professor are (1) continuing accomplishment in teaching, (2) continuing accomplishment and some measure of national or international recognition in research or another form of creative activity, and (3) evidence of valuable professional service.

The Bush School at TAMU provided Submission Guidelines for those seeking promotion. The Guidelines detail the required contents of the candidate's dossier as well as the multi-level review process. The dossier includes documents submitted by the candidate, external peer-review letters,

and reports prepared by the various voting bodies—departmental promotion and tenure committee, department head, college promotion and tenure committee, and dean. The candidate submits a possible list of external reviewers, and the P&T committee also provides a list of possible reviewers. A group of at least seven external reviewers are selected. After receiving the external reviews and the documents provided by the candidate, the review process begins.

- The first level of review is the department P&T committee recommendation. The department P&T committee reviews the candidate's dossier, creates a report, and then makes a recommendation on whether or not to promote the candidate.

- The second level of review is by the department head who notifies the candidate of the department P&T committee's recommendation. The department head reviews the dossier, prepares a report, and then makes a recommendation. The department head notifies the candidate upon submission of the recommendation to the dean.

- The third level of review is by the college P&T committee. The college P&T committee prepares a report and recommendation on promotion. The college dean notifies the department head that the

college P&T committee has reached a decision, and the department head notifies the candidate.

- The fourth level of review is by the dean of the college. The dean reviews the dossier, prepares a report, and makes an independent determination on the candidate's promotion. The dean of the college notifies the department head upon submission of the recommendation to the Provost, and the department head notifies the candidate.

- The fifth level of review is by the Provost. The Provost reviews the dossier and makes a recommendation. The dean of faculties notifies the department head who then notifies the candidate.

- The sixth level of review is by the President of TAMU who makes the final determination on the candidate's promotion. The President notifies the Provost, who notifies the dean of faculties, who notifies the college dean, who notifies the department head, who then notifies the candidate.

## B. Dr. Bright's Promotion Process

Dr. Bright began working as a tenured associate professor at TAMU in the PSAA Department at the Bush School of Government in 2011. In May 2018, he applied for promotion to full professor. The PSAA Department P&T committee consisted of Dr. William Brown, Dr. Kent Portney, and Dr. William

West. According to Dr. Bright, his working relationship with Dr. West had deteriorated years prior. Dr. Bright believed that Dr. West would recuse himself from the PSAA P&T committee, but instead he was appointed to serve as chair of the committee.

On December 20, 2018, Department Head Dr. Lori Taylor informed Dr. Bright that the PSAA Department P&T committee unanimously voted against promotion. When Dr. Bright asked the reason for the decision, Dr. Taylor informed him that it was based upon his low research performance. The PSAA Department P&T committee determined that Dr. Bright's research record was "thin" in comparison to others promoted to full professor. The committee noted that Dr. Bright had fourteen peer-reviewed articles and only one had been published in a journal targeted to the general field of public affairs. The committee further stated that five of the seven articles Dr. Bright had published since arriving at TAMU were not in important outlets for research. According to Dr. Bright, Dr. Taylor suggested that he withdraw his application for promotion. He declined to do so and perceived Dr. Taylor's suggestion as a threat.

On December 23, 2018, Dr. Bright complained to Dean Mark Welsh about the recommendation to deny his promotion. Dr. Taylor conducted her own review of Dr. Bright's dossier and recommended against promotion to full professor. Dr. Taylor noted that the criteria for promotion consisted of the

candidate's performance in three areas: teaching, research, and service. Dr. Taylor believed that research was the most determinative in qualifying for promotion and that Dr. Bright's performance in this category did not meet the standard required for promotion to full professor. According to Dr. Taylor, Dr. Bright's early research and writing remains influential, but his work at the Bush School was "neither similarly well-received nor particularly well-placed."

On January 7, 2019, Dr. Bright filed a formal complaint of discrimination with the Equal Employment Opportunity Commission (EEOC), and on January 17, 2019, he notified Dean Welsh of his EEOC complaint. Dr. Bright's complaint alleging discrimination was filed with TAMU's Department of Civil Rights and Equity Investigations which triggered an investigation into the allegations and resulted in TAMU directing that Dr. Bright's promotion process be stopped pending the investigation. Following a five-month investigation, TAMU's Department of Civil Rights and Equity Investigations found no evidence to support Dr. Bright's allegations of discrimination, and the promotion process resumed.

Dean Welsh recused himself from reviewing Dr. Bright's promotion application believing it was "the fairest thing to do." Dean Welsh wanted to have "someone with no exposure to the months of investigations, grievances, and related communications" make a recommendation on Dr. Bright's promotion. The Bush College P&T committee reviewed Dr. Bright's dossier,

and all four committee members determined that his research had not met the standards for promotion to full professor. The interim dean appointed to serve in place of Dean Welsh and the Provost also determined that Dr. Bright's research was not sufficient to qualify for promotion. The final determination on Dr. Bright's promotion to full professor was made by the President of TAMU at the time, Dr. Michael Young. Dr. Young conducted his own independent review of Dr. Bright's promotion materials and decided against promotion. Dr. Young concluded that "Dr. Bright's scholarship did not yet merit promotion to full professor." Dr. Bright was informed on December 12, 2019, that Dr. Young had denied his promotion application.

## II. Procedural History

On March 18, 2020, Dr. Bright filed suit against TAMU alleging causes of action for discrimination, retaliation, and hostile work environment in violation of the Texas Commission on Human Rights Act (TCHRA). He alleged that TAMU discriminated and retaliated against him based on his race, retaliated against him for engaging in a protected activity of filing a discrimination complaint, and put him in a hostile working environment. TAMU filed a plea to the jurisdiction in which it argued that Dr. Bright (1) did not exhaust his claims with the EEOC as required, (2) cannot make a prima facia case for any of his claims, and (3) is seeking to challenge an academic determination. Dr. Bright responded that he was not trying to undermine an

academic decision but rather challenging the process that was used by TAMU in reviewing his application and applying the applicable standards. Dr. Bright maintained that he was treated differently than his comparators and that the different treatment was motivated by race. He further responded that there were material issues of fact precluding TAMU's plea to the jurisdiction. After a hearing, the trial court granted TAMU's plea to the jurisdiction. This appeal followed.

### III. Discussion

Dr. Bright argues in three issues that the trial court erred in granting the plea to the jurisdiction because he administratively exhausted all of his claims, satisfied his burden to make a prima facia case for discrimination, retaliation, and hostile work environment, and that an evaluation of his claims does not require the court to undermine an academic determination. In his brief, Dr. Bright included Appendices A through P to support his arguments. TAMU filed a Motion to Strike Appendices A through K because they were not part of the appellate record. An appellate court may not consider matters outside of the appellate record. *In re Marriage of Roman and Gonzalez*, No. 10-06-00023-CV, 2007 WL 1378493, at n.2 (Tex. App.—Waco May 9, 2007, no pet.) (mem. op.) (citing *Sabine Offshore Serv. v. Port Arthur*, 595 S.W.2d 840, 841 (Tex.1979)). Attaching documents as exhibits or appendices to a brief is not a formal inclusion in the record, and those documents cannot be considered.

*Id.* Therefore, because Appendices A through K were not included in the appellate record, we grant TAMU's motion and will not consider those appendices in this appeal. *See id.*

## A. Legal Principles

As a state university, TAMU is immune from suit absent an express legislative waiver. *See Tex. Tech Univ. Health Scis. Ctr. – El Paso v. Flores,* 709 S.W.3d 500, 504 (Tex. 2024). Immunity from suit defeats a trial court's subject matter jurisdiction and is properly raised in a plea to the jurisdiction. *Tex. Dep't of Parks and Wildlife v. Miranda,* 133 S.W.3d 217, 225–26 (Tex. 2004). Whether a court has subject matter jurisdiction is a question of law reviewed de novo. *Id.* at 226.

Customarily a plea to the jurisdiction challenges whether facts have been alleged that affirmatively demonstrate the court's jurisdiction to hear the case. *Mission Consol. Indep. Sch. Dist. v. Garcia,* 372 S.W.3d 629, 635 (Tex. 2012). "When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Ryder Integrated Logistics, Inc. v. Fayette County,* 453 S.W.3d 922, 927 (Tex. 2015) (per curiam). In conducting our review, we construe the pleadings liberally in favor of the plaintiff and look to the plaintiff's intent. *Miranda,* 133 S.W.3d at 226. The plaintiff has the burden to plead facts affirmatively showing the trial court has subject-matter

jurisdiction. *Id.* at 226. A court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). If a plea to the jurisdiction challenges jurisdictional facts, the court can consider evidence necessary to resolve any dispute over those facts even though the facts implicate the merits of the cause of action. *Garcia*, 372 S.W.3d at 635. In considering this evidence, we "take as true all evidence favorable to the nonmovant" and "indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Miranda*, 133 S.W.3d at 228. If evidence does create a fact question on a jurisdictional issue, the trial court cannot grant the plea to the jurisdiction. *Id.* at 227–28. The fact issues will then need to be resolved by the finder of fact. *Id.* at 228. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* If pleadings affirmatively negate the existence of jurisdiction, then a plea may be granted without allowing an opportunity to amend. *Id.* at 227.

Dr. Bright alleged causes of action for discrimination, retaliation, and hostile work environment in violation of the TCHRA. Under the TCHRA, "an employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer . . . discharges an

individual or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." *Garcia*, 372 S.W.3d at 633 (quoting TEX. LABOR CODE ANN. § 21.051). When a plaintiff fails to demonstrate a prima facia case of discrimination under the TCHRA, the trial court has no jurisdiction, and the claim should be dismissed. *Id.* at 637. Therefore, we must first determine whether Dr. Bright demonstrated a prima facia case for his claims of discrimination, retaliation, and hostile work environment.

## B. Discrimination

To establish discrimination in violation of the TCHRA, Dr. Bright must show that he was (1) a member of the class protected by the TCHRA, (2) qualified for his employment position, (3) terminated by the employer, and (4) treated less favorably than similarly situated members of the opposing class. *See AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008). The parties' arguments focus on whether Dr. Bright was treated less favorably than similarly situated comparators outside of his protected class.

Dr. Bright offered Dr. Taylor and Dr. Brown as comparators. The question of whether Dr. Bright presented a prima facie case of racial discrimination turns on whether either or both of them were similarly situated to him. If Dr. Bright established this element of his prima facie discrimination case, the burden shifts to TAMU to demonstrate that it had a legitimate

nondiscriminatory reason for denying Dr. Bright's promotion. *See Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated. *Id.* To prevail, Courts require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken "under nearly identical circumstances." *Id.* at 260. The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. *Id.* TAMU argues that Dr. Bright is not similarly situated to Dr. Taylor and Dr. Brown. We agree.

Dr. Taylor is an economist, and her field of study and expertise concerns state and local public finance, especially education finance. In contrast, Dr. Bright holds a Ph.D. and M.P.A. in Public Administration and a B.A. in psychology. His field of study and expertise is public administration, management, and public service motivation. It is generally accepted that professors who work in different academic disciplines are not similarly situated employees. *See Chatha v. Prairie View A&M Univ.*, No. 4:14-CV-3234,

2016 WL 4543887, at \*8 (S.D. Tex. Aug. 10, 2016), *report and recommendation adopted sub. nom. Chatha v. Prairie View A&M Univ.*, No. 4:14-CV-3234 2016 WL 4557504 (S.D. Tex. Aug. 31, 2016). Working in different academic disciplines within a university typically requires distinctive skills, and so any comparison for racial discrimination is inappropriate. *Niemann v. University of N. Tex.*, No. 4:17-CV-00206, 2018 WL 588273, at \*4 (E.D. Tex. Jan. 29, 2018). Dr. Bright argues on appeal that he and Dr. Taylor should have been subjected to the same standards during their promotion reviews, but he offers no evidence to show that they are similarly situated. He further offers no evidence that he was subjected to different promotion standards than Dr. Taylor.

Dr. Brown is an organizational psychologist. His field of study concerns serving, consulting, and studying nonprofit operations and management. Although Dr. Bright and Dr. Brown are both in the Bush School of Government and Public Service, they are in different academic disciplines. *See Chatha*, 2016 WL 4543887, at \*8. In addition, the Bush School had a different dean when Dr. Brown applied for promotion. Thus, Dr. Bright and Dr. Brown were not similarly situated because they did not have the same supervisor at the time they sought promotion. *See Lee,* 574 F.3d 253 at 260.

Dr. Bright maintains that he and Dr. Brown are similarly situated because they research similar topics. He contends that Dr. Brown was not subjected to the same standards during his promotion review because Dr.

Brown published less articles than he did while employed at TAMU. However, Dr. Brown's promotion records indicate that he had three papers in press or draft form when he joined the Bush School in 2006. Since then, he has published three joint articles. In addition, he published three other pieces. In 2010, he wrote a chapter in *Handbook of Nonprofit Management & Leadership*. In 2014, the textbook he wrote, *Strategic Management in Nonprofit Organizations*, was published. He also had a number of conference presentations that sometimes get converted into published manuscripts. Dr. Bright has not shown that Dr. Brown was deficient in research and scholarship or that he was subjected to different standards in the promotion process.

The PSAA Department P&T committee determined that Dr. Bright's research record was "thin" in comparison to others promoted to full professor. The PSAA Department P&T committee also determined that Dr. Bright's articles published since arriving at TAMU were not in important outlets for research. Courts are ill equipped to evaluate the academic judgment of professors and universities. *Tex. S. Univ. v. Villereal*, 620 S.W.3d 899, 907 (Tex. 2021). Therefore, we will not evaluate what constitutes an important outlet for research. Dr. Bright states that he is not asking the Court to compare the quality of his research to that of Dr. Brown's, nor is he asking the Court to determine what journals are more valuable. Rather, he contends that he is claiming TAMU followed the Department's bylaws when determining whether

to promote Dr. Brown but deviated from the bylaws when evaluating his promotion dossier. The only evidence Dr. Bright offered in support of this argument is a comparison of his and Dr. Brown's publications. The parties agree that the bylaws do not require a minimum number of citations, but state that quality should be valued above sheer number.

The record shows that Dr. Bright's promotion application was measured against the PSAA Department Bylaws and that his research did not meet the standard required for promotion to full professor. The record does not support Dr. Bright's argument that Dr. Taylor and Dr. Brown were similarly situated comparators or that Dr. Bright was treated less favorably than Dr. Taylor and Dr. Brown. We conclude that Dr. Bright did not demonstrate a prima facia case for his claim of discrimination.

## C. Retaliation

To establish a prima facia case for retaliation, Dr. Bright must show that (1) he engaged in an activity protected by the Texas Commission on Human Rights Act, (2) an adverse employment action occurred, and (3) there exists a causal link between the protected activity and the adverse action. *Exxon Mobile Corp. v. Rincones*, 520 S.W.3d 572, 585 (Tex. 2017). Dr. Bright contends that TAMU has taken several adverse employment actions against him including (1) allowing Dr. West to remain chair of his promotion review committee, (2) Dean Welsh recusing himself from the promotion process,

(3) Dr. Taylor giving him an unfavorable performance review, and (4) denying his promotion application.

For purposes of discrimination, the TCHRA only addresses ultimate employment decisions; it does not address every decision made by employers that arguably might have some tangential effect upon employment decisions. *Navy v. Coll. Of Mainland*, 407 S.W.3d 893, 899 (Tex. App.—Houston [14th Dist. 2013, no pet.) Generally, ultimate employment actions involve hiring, granting leave, discharging, promoting, and compensation, but not "events such as disciplinary filings, supervisor's reprimands, and even poor performance by the employee—anything which *might* jeopardize employment in the future." *Id.* (quoting *Mattern v. Eastman Kodak, Co.*, 104 F.3d 702, 707–08 (5th Cir. 1997), *abrogated on other grounds by Burlington Ne. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)). Dr. Bright's complaints that Dr. West remained on the PSAA Department P&T Committee, that Dean Welsh recused himself, and that Dr. Taylor gave him a poor performance review are not ultimate employment decisions. *See Navy*, 407 S.W.3d at 899. Dr. Bright argues that "courts are not supposed to address each action independently, but in the larger context of the plaintiff's employment as a whole." However, he does not provide any authority for this argument.

Moreover, there is nothing in the record to support Dr. Bright's argument that TAMU retaliated against him by allowing Dr. West to remain chair of his promotion review committee or by Dean Welsh recusing himself. While Dr. Bright explained that he did not have a good working relationship with Dr. West, there is nothing to show that Dr. West remaining on the promotion review committee was in retaliation for Dr. Bright filing a discrimination complaint.

Dr. Bright stated that Dr. Welsh's decision to recuse himself from the promotion process intentionally harmed his promotion application and caused him humiliation. Dean Welsh explained that he was disappointed in Dr. Bright's communication with TAMU staff and administrators about his allegations of discrimination and the processes to consider them. Dean Welsh believed the "fairest thing to do was to give Dr. Bright the benefit of the doubt, recuse [himself] and have someone with no exposure to the months of investigations, grievances, and related communications focus solely on the material in the promotion portfolio" make a recommendation on Dr. Bright's promotion. While the record supports a finding that Dean Welsh's recusal was in response to Dr. Bright's discrimination complaints, it does not support a finding that it was in retaliation for the discrimination complaint.

Dr. Taylor's performance evaluation noted that his research was "less than is expected" from an associate professor. Dr. Taylor gave Dr. Bright a

favorable review on his teaching and service. There is no evidence that Dr. Taylor's performance review was in retaliation for his discrimination complaint. Rather, it is consistent with multiple reviews of his research during the promotion process.

As to Dr. Bright's claim that his promotion was denied in retaliation for filing a discrimination complaint, he filed a complaint with Dean Welsh and the EEOC after the PSAA Department P&T committee recommended against his promotion. Therefore, there was no retaliation by the PSAA Department P&T committee. Dr. Bright maintains that it is misleading to state that he made his EEOC complaint after his promotion was recommended to be denied because TAMU uses a multi-level decision making process in conducting promotion reviews.

Dr. Bright's promotion application followed the TAMU promotion process of a multi-level review. There is nothing in the record to affirmatively show that any of the reviewers were aware of Dr. Bright's EEOC complaint. The decision on promotion ultimately rested with Dr. Young, the President of TAMU. In order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity. *Manning v. Chevron Chem. Co.., LLC*, 332 F.3d 874, 883 (5th Cir. 2003). There is nothing in the record to show that Dr. Young was aware of Dr. Bright's EEOC complaint. In addition, each level of independent

review reached the same conclusion—Dr. Bright's research did not meet the standard required for a full professor. We conclude that Dr. Bright did not demonstrate a prima facia case for his claim of retaliation.

**D. Hostile Work Environment**

TAMU argues that Dr. Bright failed to preserve this claim because he did not include it in his EEOC charge. We agree.

Before a plaintiff can maintain a suit for employment discrimination under the TCHRA, the plaintiff first must file a charge of employment discrimination with the TWC or EEOC. *Alief Indep. Sch. Dist. v. Brantley*, 558 S.W.3d 747, 755 (Tex. App.—Houston [14th Dist. 2018, pet. denied). The Texas Labor Code requires that a plaintiff file an EEOC complaint within 180 days of the alleged discriminatory act. *See* TEX. LABOR CODE ANN. §§21.201–02. A lawsuit under the TCHRA is limited to claims made in the EEOC charge and factually related claims that can reasonably be expected to grow out of the investigation. *Alief Indep. Sch. Dist.*, 558 S.W.3d at 756.

Dr. Bright responds that he preserved this complaint because he checked the box on the EEOC charge of discrimination form indicating that the discrimination was ongoing. In *Alief Indep. Sch. Dist.*, the plaintiff alleged for the first time in his amended petition acts that contributed to a hostile work environment. *Id.* The Court reasoned that even though the plaintiff did not mention the specific acts in his EEOC charge, the charge included an adequate

factual basis to put the school district on notice that the plaintiff was complaining of discrimination based upon his race and gender resulting in a hostile work environment. *Id.* However, unlike the plaintiff in *Alief Indep. Sch. Dist.*, Dr. Bright did not allege any factual basis concerning a hostile work environment. Dr. Bright only asserted allegations that TAMU denied his promotion based upon his race and that he was retaliated against for engaging in a protected activity. He made no allegation of a hostile work environment. While he checked the box indicating ongoing discrimination, he did not allege any facts to show a hostile work environment. Because he did not include a hostile work environment allegation in his EEOC charge, Dr. Bright did not exhaust his administrative remedy for this complaint and has not preserved this complaint for review. *See id.*

Moreover, even if he had preserved his complaint for review, he did not establish a prima facia case of a hostile work environment. A hostile work environment claim "entails ongoing harassment, based on the plaintiff's protected characteristic, so sufficiently severe or pervasive that it has altered the conditions of employment and created an abusive working environment." *Donaldson v. Tex. Dep't of Aging and Disability Servs.*, 495 S.W.3d 421, 445 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (quoting *Bartosh v. Sam Houston State Univ.*, 259 S.W.3d 317, 324 (Tex. App.–Texarkana 2008, pet. denied)). To demonstrate a prima facie case of hostile work environment, a

plaintiff must show that: "(1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on the protected characteristic; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Id*. To satisfy the fourth element of a hostile environment claim, a plaintiff must show that the workplace was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to create a hostile or abusive working environment. *Id*.

Dr. Bright contends that several instances of discriminatory and retaliatory behavior made his work environment at TAMU hostile including allowing Dr. West to chair the promotion committee, Dean Welsh recusing himself from the promotion review process, and the denial of his promotion. However, he does not identify any acts that show his workplace was "permeated with discriminatory intimidation, ridicule, and insult sufficiently severe" so as to create a hostile or abusive working environment. *See id*. Accordingly, Dr. Bright has not demonstrated a prima facie case for his claim of a hostile work environment.

## IV. Conclusion

Having considered all of Dr. Bright's complaints on appeal, we overrule each of his three issues. We affirm the trial court's order granting TAMU's plea to the jurisdiction.

<br>

MATT JOHNSON
Chief Justice

OPINION DELIVERED and FILED:  June 26, 2025

Before Chief Justice Johnson,
      Justice Smith, and
      Justice Harris
Affirmed; motion granted
CV06

