# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30986

United States Court of Appeals
Fifth Circuit

**FILED**

June 28, 2016

Lyle W. Cayce
Clerk

PATRICIA A. MORRIS,

       Plaintiff–Appellant,

v.

TOWN OF INDEPENDENCE; MICHAEL RAGUSA,

       Defendants–Appellees.

———————————

Appeal from the United States District Court
for the Eastern District of Louisiana

———————————

Before HIGGINBOTHAM, SMITH, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

       Patricia A. Morris appeals a summary judgment in favor of Defendants, the Town of Independence and Mayor Michael Ragusa, on her claim alleging racial discrimination in employment under 42 U.S.C. § 1981. We affirm.

## I

       Morris, an African-American woman, was a part-time employee of the Town of Independence (the Town). According to both parties, Mayor Ragusa hired Morris after a mutual acquaintance informed Mayor Ragusa that Morris

needed a job. Mayor Ragusa later testified that he extended employment to Morris out of the "kindness of [his] heart."

Morris's exact role of employment with the town was seemingly undefined. Employment documents indicate, and the parties acknowledge, that Morris was hired as an "Assistant Town Clerk." It is undisputed, however, that Morris's title was one of form and not function. Morris testified that she knew, from "[t]he first day of employment," that she would not be working as an Assistant Town Clerk. Morris further testified that she was never given duties of an Assistant Town Clerk. When asked whether her job responsibilities were similar to that of Jeanette Patanella—the incumbent Assistant Town Clerk when Morris was hired—Morris responded that Patanella "had a lot more to do with helping the [Town] [C]lerk."

Instead, Morris testified that she was ultimately asked to collect water and sewer bills. Mayor Ragusa similarly testified that Morris's job was to "be at the window and collect the water bills, sewer, tickets and things like that." Morris characterizes this position as that of a "water clerk." Though Defendants argue that there is "no formal Water Clerk position" and Mayor Ragusa testified that he was unaware Morris had any title, a discovery document submitted by the Town classifies Morris as a "water clerk," and ranks the position as subordinate to that of Assistant Town Clerk. It is undisputed that throughout her employment with the Town, Morris worked in a part-time capacity.

Mayor Ragusa discharged Morris seven months after she was hired. According to Morris, Mayor Ragusa stated that the discharge was due to budget cuts. During his deposition, Mayor Ragusa explained that the Town experienced a 22% reduction in budget across the board, and that the cuts could come from "anything," including, for example, "workers," "wages," "equipment," or "fuel." Mayor Ragusa then provided an additional reason for

No. 15-30986

Morris's termination—he claimed that Morris's termination was motivated in part by performance concerns and his understanding that Morris was "going to get a job somewhere else." Mayor Ragusa testified that he had received verbal complaints of Morris's performance from other employees, though he acknowledged that the complaints were never documented and that he had no personal knowledge of Morris's alleged non-performance.

Morris filed suit against the Town and Mayor Ragusa (Defendants), alleging claims under 42 U.S.C. §§ 1981, 1983, and 1985, and state law. Morris alleged, among other things, that she was terminated on the basis of her race. Defendants moved for summary judgment on all claims. The district court granted the motion, holding in relevant part that Morris had failed to carry her burden to demonstrate that Defendants' proffered reasons for termination were pretext for racial discrimination. Morris timely appealed.

## II

We review a summary judgment de novo, applying the same standard as the district court.[1] Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] In conducting our review, "[w]e view the evidence in the light most favorable to the non-moving party and avoid credibility determinations and weighing of the evidence."[3]

---

[1] *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010).

[2] FED. R. CIV. P. 56(a).

[3] *Jackson*, 602 F.3d at 377.

No. 15-30986

### III

Morris challenges only the district court's judgment with respect to her claims arising under 42 U.S.C. § 1981.[4]  Morris's chief complaint is that her termination was the result of racial discrimination.

Morris argues that the Town's proffered reasons for her termination—budgetary cuts and performance concerns—are pretext for racial discrimination.  She notes that a Caucasian, full-time, Assistant Town Clerk, Rhonda Crocker, retained her job while Morris was discharged, despite Crocker's later hiring date.  Crocker was hired the day after the prior Assistant Town Clerk, Patanella, was discharged due to a conflict of interest, and about one month before Morris was discharged.  Additionally, Morris claims that "very shortly []after" her termination, Mayor Ragusa "hired a white male as a superintendent in the Water and Sewer Department," and "later hired a white female in the same position, clerk, that [Morris] previously held."  Morris further argues that she received "no reprimands, write ups, or disciplinary procedures" during her employment.  Morris contends that the Town Clerk assured Morris that her job was secure.

Defendants respond that the decision to retain Crocker and discharge Morris is accounted for by grounds other than race.  They contend that, unlike Crocker, Morris held a part-time and non-essential position, performed tasks that "mimicked [those] of other workers in the department," and was the subject of performance concerns.  Defendants further claim that the Caucasian male hired in the Water and Sewer Department "is irrelevant because its budget is separate from that of the Administrative Staff" and that Morris lacked necessary certifications for the position.  They additionally provide

---

[4] 42 U.S.C. § 1981 (providing that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts . . . as is enjoyed by white citizens").

4

evidence that the Caucasian, female, "clerk" to whom Morris refers was hired as a "Citation Clerk" five-and-a-half months subsequent to Morris's termination and after a change in the structure of the department. Defendants finally note that the Town Clerk "was not in charge of hiring and firing employees," and thus, Morris could not reasonably rely on any assurances provided by the Town Clerk.

Claims of racial discrimination based on circumstantial evidence under § 1981 are analyzed under the familiar *McDonnell Douglas*[5] burden-shifting analysis.[6] Under this three-part framework, a plaintiff must first set forth a prima facie case of discrimination.[7] If the plaintiff makes this showing, a presumption of discrimination arises and the burden of production shifts to the employer to "articulate a legitimate non-discriminatory reason for the adverse employment action."[8] If the employer carries this burden, the "inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination."[9]

Defendants first argue, as they did below, that Morris has failed to carry her burden to establish a prima facie case of discrimination. To establish a prima facie case of racial discrimination in employment, an employee must demonstrate that she "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated

---

[5] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).

[6] *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316-17 (5th Cir. 2004).

[7] *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 227 (5th Cir. 2015).

[8] *Id.* (quoting *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009)).

[9] *Davis*, 383 F.3d at 317.

5

employees outside the protected group."[10]   With respect to the "similarly situated employees" requirement, "a plaintiff must show that he was treated less favorably than others 'under nearly identical circumstances.'"[11]

Defendants do not contest that Morris satisfied the first three elements of her prima facie case; they argue only that Morris has "failed to establish that 'similarly situated employees' were treated more favorably under 'nearly identical circumstances.'"  The district court appeared inclined to agree that Morris had not satisfied this requirement, but nevertheless "assum[ed], without deciding" that she had, and instead held that Morris failed to demonstrate that Defendants' stated reasons for Morris's termination were pretext under step three of *McDonnell Douglas*.  As we are permitted to affirm the judgment below on any ground supported by the record,[12] we hold that Morris has failed to set forth a prima facie case, and therefore, the district court properly granted summary judgment in favor of Defendants.

This court considers a number of factors in determining whether employees are similarly situated.

> Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated.  Likewise, employees who have different work responsibilities or who are

---

[10] *Willis v. Cleco Corp.*, 749 F.3d 314, 319-20 (5th Cir. 2014) (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam)) (setting forth the elements of a prima facie case in the context of a race-discrimination claim under Title VII of the Civil Rights Act of 1964); *see also Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002) ("This Court considers claims of intentional discrimination, which include racial discrimination and retaliation claims based on Title VII and 42 U.S.C. § 1981, under the same rubric of analysis.").

[11] *Willis*, 749 F.3d at 320 (quoting *Lee v. Kan. City S. Ry.*, 574 F.3d 253, 259-60 (5th Cir. 2009)).

[12] *Gilbert v. Donahoe*, 751 F.3d 303, 311 (5th Cir. 2014).

subjected to adverse employment action for dissimilar violations are not similarly situated.[13]

The similarly situated analysis is intended to ensure that the challenged action was "taken under nearly identical circumstances."[14]  Such circumstances exist when "the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."[15]  We have noted, however, that "nearly identical" is not synonymous with "identical."[16]

Here, Morris offers as a comparator Rhonda Crocker, the full-time, Assistant Town Clerk who retained her job while Morris was discharged. Crocker is not similarly situated to Morris.  By her own admission, Morris did not perform the traditional job responsibilities of an Assistant Town Clerk. Morris does not dispute that Crocker replaced Patanella, the full-time employee who, according to Morris, held the true title and performed the actual job responsibilities of Assistant Town Clerk.  Further, Morris at all times worked in a part-time capacity, while Crocker is a full-time employee.[17] Finally, though Morris claims she was never reprimanded or the subject of a documented complaint, she has not disputed Mayor Ragusa's claim that he received *verbal* complaints from Town employees regarding Morris's performance.  Morris has offered no evidence that Crocker, or any other employee, was retained despite performance concerns.

---

[13] *Lee*, 574 F.3d at 259-60.

[14] *Id.* at 260.

[15] *Id.*

[16] *Id.*

[17] *See Johnson v. Univ. of Iowa*, 431 F.3d 325, 330 (8th Cir. 2005) ("Generally, part-time employees are not similarly situated to full-time employees."); *Ilhardt v. Sara Lee Corp.*, 118 F.3d 1151, 1155 (7th Cir. 1997) ("[F]ull-time employees are simply not similarly situated to part-time employees."); *see also Lowery v. Hazelwood Sch. Dist.*, 244 F.3d 654, 660 (8th Cir. 2001).

No. 15-30986

Morris does not contest these differences on appeal. Rather, relying on Seventh Circuit precedent, Morris first argues that whether employees are similarly situated is a factual inquiry that is "usually a question for the fact-finder."[18] It may be true that the inquiry is often reserved for the fact-finder. But that is only the case when the plaintiff has produced sufficient evidence that would permit a reasonable fact-finder to conclude that the plaintiff and other employees are similarly situated. When the plaintiff does not do so, summary judgment is appropriate.[19] This is such a case.

Morris next argues that her "unique" job role should not bar her ability to present a prima facie case. She contends that differences between her and Crocker's "duties or responsibilities [are] not dispositive." Morris cites *Ercegovich v. Goodyear Tire & Rubber Co.*, in which the Sixth Circuit rejected a narrow reading of prior precedent that would require "[a] plaintiff to demonstrate that he or she was similarly-situated *in every aspect* to an employee outside the protected class."[20] The *Ercegovich* court noted that under such a rule, "a plaintiff whose job responsibilities are unique to his or her position w[ould] *never* successfully establish a prima facie case (absent direct evidence of discrimination)," and that result would "undermine the remedial purpose of the anti-discrimination statutes."[21] Accordingly, the Sixth Circuit clarified that a plaintiff need only "demonstrate that he or she is similarly-situated to the non-protected employee in all *relevant* respects."[22] The Sixth Circuit held that differences in particular job functions "d[id] not

---

[18] *See Coleman v. Donahue*, 667 F.3d 835, 846-47 (7th Cir. 2012) (quoting *Srail v. Vill. of Lisle*, 588 F.3d 940, 945 (7th Cir. 2009)).

[19] *See, e.g., Thomas v. Johnson*, 788 F.3d 177, 180-81 (5th Cir. 2015); *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 345 (5th Cir. 2005).

[20] 154 F.3d 344, 353 (6th Cir. 1998) (emphasis added).

[21] *Id.* (emphasis in original).

[22] *Id.* (emphasis in original).

automatically constitute a meaningful distinction" between an older plaintiff that was not provided an offer to transfer to other available positions and the younger comparators that were provided the transfer opportunity after the company initiated a reduction-in-force and general reorganization.[23]

To the extent that the Sixth Circuit's requirement that the differences between a plaintiff and proffered comparators be *relevant* to the challenged employment action differs from the law in this circuit, about which we express no opinion, Morris has not made the requisite showing.[24] Morris's part-time employment and differing job functions, coupled with the sui generis nature of her employment, distinguish her position from that of the proffered comparator. That Mayor Ragusa had received verbal complaints about Morris's performance is yet another relevant, distinguishing factor.

We note that in *Ercegovich*, the plaintiff alleged that he was qualified for open positions in the company but not offered a transfer due to his age.[25] That claim provides a separate palette of relevant factors, which could reasonably exclude particular differences in job functions among related roles. For example, the *Ercegovich* court found relevant that the plaintiff's and comparators' positions were "all related human resources positions that were all eliminated pursuant to a general reorganization" of the human resources department at a particular location.[26] Here, in contrast, job responsibilities, part-time versus full-time employment, and performance are all relevant factors that may be considered when determining whether employees are similarly situated in the context of budget-based terminations.

---

[23] *Id.*

[24] *Cf. id.* ("The district court did not address the relevancy of these factors to the plaintiff's claim that Goodyear denied him the opportunity to transfer to open positions within the company on the basis of age.").

[25] *See id.* at 351-52.

[26] *Id.* at 353.

No. 15-30986

Because we hold that Morris has not met her burden to set forth a prima facie case of racial discrimination, we need not discuss the parties' remaining arguments regarding pretext.   Morris briefly argues that she "did not receive any training for her position, despite inquiring several times to defendants about receiving proper training" and that she "was never given full-time hours or benefits, despite inquiring several times about why she was only allowed to work for three days a week instead of full-time."   To the extent these claims are intended to support a failure-to-train or failure-to-promote cause of action, we deem them abandoned.[27]   Morris has only offered conclusory statements and has provided no legal argument to support such legal theories. Specifically, Morris has failed to identify any Town of Independence employees that received training or promotions while Morris did not.

*     *     *

The judgment of the district court is AFFIRMED.

---

[27] *See Jason D.W. ex rel. Douglas W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 210 n.4 (5th Cir. 1998) (per curiam) ("Failure to provide any legal or factual analysis of an issue on appeal waives that issue.").