**REVISED August 1, 2019**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-30856

United States Court of Appeals
Fifth Circuit

**FILED**

July 31, 2019

Lyle W. Cayce
Clerk

LABRITTANY K. HASSEN,

Plaintiff–Appellant,

v.

RUSTON LOUISIANA HOSPITAL COMPANY, L.L.C., doing business as
Northern Louisiana Medical Center,

Defendant–Appellee.

Appeal from the United States District Court
for the Western District of Louisiana

Before KING, SMITH, and WILLETT, Circuit Judges.

DON R. WILLETT, Circuit Judge:

In this Title VII race-discrimination case, LaBrittany Hassen contends that Ruston Louisiana Hospital denied her a full-time nurse position and later fired her from her part-time position because she's black. The district court granted summary judgment to the hospital, concluding that Hassen failed to satisfy the *McDonnell Douglas* burden-shifting framework. We AFFIRM.

No. 18-30856

## I

LaBrittany Hassen worked at a large hospital called the Northern Louisiana Medical Center as a PRN nurse.[1] "PRN" stands for "pro re nata"—a Latin phrase, which (roughly translated) means "in the circumstances."[2] In other words, PRN nurses are as-needed workers.[3] Although Hassen had applied for a PRN position, she had also applied for a full-time position. But the hospital interviewed and hired her only as a PRN. This was in February 2012.

On the same day, the hospital hired two full-time nurses with less experience than Hassen. One had no nursing experience; and the other had graduated only one year before with merely a temporary license. Hassen, on the other hand, had graduated from nursing school three years before and had her full license. Even so, all three nurses had the same duties.

The reason for these hiring decisions? Hassen says that it's because she's black, whereas the two full-time nurses are white.

Two months after starting work, Hassen saw notices for two full-time vacancies. She approached her supervisor about the positions, but her supervisor replied that Hassen wasn't qualified. So Hassen didn't apply.

Next, Hassen alleges that the hospital fired her because of her race. What happened was this: In the summer of 2012, Hassen told her supervisor that she had accepted a full-time nursing position elsewhere. In response, the hospital fired her. The hospital prefers the phrase "purging" for removing a

---

[1] For our review, we view the facts in the light most favorable to Hassen as the nonmovant, drawing all reasonable inferences in her favor. *See Morris v. Town of Independence*, 827 F.3d 396, 399 (5th Cir. 2016).

[2] *Pro re nata*, OXFORD ENGLISH DICTIONARY, https://www.oed.com/view/Entry/238171?redirectedFrom=pro+re+nata#eid.

[3] *See id.* ("For an occasion as it arises; . . . as required, as needed.").

No. 18-30856

PRN from the work pool. Whatever the term, Hassen ascribes her termination to race discrimination. The hospital disputes this.

The hospital says that Hassen's hours at her new full-time job directly conflicted with the only shifts available to PRN nurses. The hospital also underscores that it told Hassen that she remained "eligible for re-hire" if she applied. And the hospital stresses that Hassen never applied for re-hire.

Hassen timely filed a discrimination complaint with the EEOC. The EEOC found "reasonable cause to believe" that the hospital violated Title VII. Unable to settle with the hospital, the EEOC ended its investigation and issued Hassen a right-to-sue letter. Off to federal court.

But Hassen didn't fare well there. Applying the *McDonnell Douglas* framework,[4] the district court granted the hospital's summary-judgment motion, dismissing the suit with prejudice. The court held that Hassen had made a prima facie case that the hospital didn't hire her for a full-time position, but that she failed to show that the hospital's stated explanation was mere pretext. The court also held that Hassen failed to make a prima facie case that her firing was improper. But the court held that even if she had, she still failed to show that the hospital's justification was mere pretext.

II

Standards for assessing summary judgment are well settled. A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] We review a grant of summary judgment de novo, applying the same standard as the district court.[6] But we view the evidence

---

[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).

[5] FED. R. CIV. P. 56(a).

[6] *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010).

No. 18-30856

and draw all justifiable inferences in favor of the nonmovant.[7] Even so, barebones, conclusory, or otherwise-unsupported assertions won't cut it;[8] the nonmovant "must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial."[9]

## III

When—as here—a plaintiff proffers circumstantial evidence of discrimination, the plaintiff must satisfy the Supreme Court's *McDonnell Douglas* framework.[10] It's a three-part burden-shifting scheme. As we recently explained in *Morris*, the framework first requires the plaintiff to establish a prima facie case of discrimination.[11] To do that, the plaintiff must show:

1. She's a member of a protected group;
2. She was qualified for the position at issue;
3. The employer fired her or took some adverse employment action; and
4. The employer replaced her with someone outside the protected group or treated her less favorably than other similarly situated employees outside the protected group.[12]

Then, the burden shifts to the defendant. The defendant must "articulate a legitimate non-discriminatory reason for the adverse employment action."[13] If the defendant does, the burden shifts back to the plaintiff, who must offer evidence that the employer's reason was mere pretext.[14]

---

[7] *Id.*

[8] *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.").

[9] *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007).

[10] *McDonnell Douglas*, 411 U.S. at 802.

[11] *Morris*, 827 F.3d at 400 (citing *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 227 (5th Cir. 2015)); *Paske v. Fitzgerald*, 785 F.3d 977, 984 (5th Cir. 2015) (citing *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411–12 (5th Cir. 2007)).

[12] *Morris*, 827 F.3d at 400 (citing *Willis v. Cleco Corp.*, 749 F.3d 314, 319–20 (5th Cir. 2014)).

[13] *Id.* (citing *Burton*, 798 F.3d at 227).

[14] *Id.* (citing *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004)).

No. 18-30856

Here, the parties don't dispute the first two prima facie elements. Hassen is black, a protected class. And she holds a nursing degree. The hospital doesn't challenge her qualifications. We first decide Hassen's failure-to-hire claim. Then we consider her termination claim.

A

Hassen's prima facie case on her failure-to-hire claim is cut-and-dried. First, the hospital didn't hire her for the full-time position. And her hospital supervisor discouraged her from applying for a promotion. Adverse employment action: check. Second, the hospital concedes that it hired two white nurses for full-time positions despite not hiring Hassen. Less favorable treatment: check. So Hassen carries her prima facie burden.

But the hospital offers legitimate nondiscriminatory explanations— Hassen applied for a PRN position; during the interview Hassen never asked about a full-time position; she accepted a PRN position without inquiring about a full-time position instead; and she never actually applied for a full-time position online after getting the PRN position.

The dissenting opinion is concerned that the hospital has changed its story about its initial hiring decision; proffering different reasons on appeal than it did at the district court. True, in *Caldwell*, we held that when an employer switches its story, that casts doubt on those explanations.[15] But there, the employer completely switched its justification. At first, the employer claimed that the employee had refused to work.[16] But then later, the employer changed its story; saying merely that the employee failed to seek out extra work.[17] Or take this court's 2007 decision in *Burrell*, which *Caldwell* cites.[18]

---

[15] 850 F.3d 237, 242 (5th Cir. 2017).

[16] *Id.*

[17] *Id.*

[18] *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408 (5th Cir. 2007). Alert readers will notice a citation slip-up here. Dr Pepper has 23 flavors but 0 periods. The

No. 18-30856

There, Dr Pepper (the employer) changed its story about why it didn't promote an employee.[19] First, Dr Pepper said only that the employee lacked purchasing experience.[20] Second, Dr Pepper said only that the employee lacked bottling experience.[21] And third, Dr Pepper said only that the employee lacked "purchasing experience in the bottling industry."[22]

Respectfully, this case is different. All along, the hospital has given a group of reasons that collectively explain why it didn't offer Hassen a full-time position.

To reiterate, both at the district court and on appeal, the hospital explained that it offered Hassen a PRN position because she applied for that position; during her interview she didn't ask about a full-time position; and once offered a PRN position, she accepted without asking about a full-time position. Admittedly, the hospital originally also added to this litany its initial, mistaken belief that Ms. Hassen didn't even apply for a full-time position. But unlike in *Caldwell* or *Burrell*, this was not its sole argument at the district court that it later swapped out for something new on appeal.

Rather, this was a single, mistaken component of an overarching argument that the hospital maintains on appeal: Its hiring decision was merely part of a routine, perfunctory hiring process.

---

court mis-punctuated America's oldest major soft drink. Born in 1885 (one year before Coca-Cola), Dr Pepper ditched the period in the 1950s after an errant logo design squished the letters so that the curvy script looked like "Di: Pepper." *See* Dr Pepper (@drpepper), TWITTER (Jan. 28, 2019, 3:12 PM), https://twitter.com/drpepper/status/1090024798133108736; *see also* Charles Scudder, *Five Things to Know About Texas' Dr Pepper*, DALL. NEWS (Jan. 3, 2018), https://www.dallasnews.com/life/texana/2018/01/29/five-things-know-texas-dr-pepper ("Don't use a period. Period.").

[19] *Burrell*, 482 F.3d at 413.

[20] *Id.*

[21] *Id.*

[22] *Id.*

No. 18-30856

That's why the hospital highlights that during the same time that Hassen was employed there, the hospital also hired at least six other black candidates for registered-nurse positions. Thus, the hospital has proffered—and maintained—the same legitimate, nondiscriminatory explanations.

So Hassen needed to offer evidence that the hospital's reasons were mere pretext. But the district court noted that she "produced no evidence that [the hospital] informed White nurses, but not Black nurses of available positions, or that [the hospital] has hired White nurses, but not Black nurses, without an online application." And in her briefs, Hassen merely recites her burden under the *McDonnell Douglas* framework. She doesn't present any new evidence or point to any overlooked evidence that, if true, would prove that the hospital's stated reasons are mere pretext. She never shows that the hospital intended to, or did, discriminate based on race. Thus, Hassen hasn't carried her burden.

Yet Hassen urges us to consider her employer's discouragement from applying for a promotion separately from the initial failure to hire. But her initial brief, complaint, and motion in opposition all treat the issue as part of the failure to hire. Even if we did divide these supposedly distinct issues, it would make no difference. Hassen would not be able to make a prima facie showing on the failure to promote: Hassen didn't allege that the hospital treated her differently from white nurses seeking promotions. Even if she had, she didn't rebut the hospital's explanation: Hassen never actually applied.

B

For Hassen to win on her termination claim, she must again make a prima facie case. Then, she must rebut the reasons that the hospital gave (this time for firing her).

Turning to the prima facie case: The district court held that purging Hassen from the work pool (i.e., firing her) wasn't an adverse employment

7

action. But termination is a classic example of adverse employment action under our caselaw.

In our decision this year in *Nall*, the adverse action was termination.[23] In our 2014 opinion *LHC Group*, the adverse action was also termination.[24] And in our 1999 case *Zenor*, the adverse action was again termination.[25] Here, whatever the reason—and even though the hospital told her she could reapply—the hospital fired Hassen. So, under the *McDonnell Douglas* framework, Hassen established that element of her prima facie case.

Yet the district court held otherwise. It held that this firing wasn't an adverse employment action because Hassen herself caused it—by taking full-time employment elsewhere. But the district court's approach conflates the prima facie stage with the next stage; where defendants may present a legitimate explanation. In *McDonnell Douglas*, the Supreme Court required the plaintiff to show that there was some adverse employment action. But it put the burden on the defendant to show that the action was reasonable—i.e., "legitimate" and not for an impermissible reason (e.g., race).[26]

In his special concurrence in *Nall*, Judge Costa characterized a termination in a helpful way: "To use a modern phrase, the firing 'is what it is': the railroad has all along acknowledged that it fired Nall because of concerns about his Parkinson's. That's discrimination on the basis of a disability. . . . [T]he hard issue in this one is not whether there was discrimination but whether that discrimination was justified."[27]

Similarly, the issue here is not whether the hospital fired Hassen. Instead, there are two issues: (1) whether the hospital retained similarly

---

[23] *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 342 (5th Cir. 2019).
[24] *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 700 (5th Cir. 2014).
[25] *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 855 (5th Cir. 1999).
[26] *McDonnell Douglas*, 411 U.S. at 802–03.
[27] *Nall*, 917 F.3d at 351–52 (Costa, J., concurring).

situated white nurses (the other half of the prima facie case); and (2) if so, whether the hospital has a legitimate reason for the different treatment.[28]

Hassen failed to make out the rest of her prima facie case. She didn't show that she was treated differently from similarly situated white nurses. The district court noted that the hospital "produced undisputed evidence that it commonly purges [people] . . . when they find full-time employment elsewhere."

Even if Hassen had made a prima facie case, the hospital met its *McDonnell Douglas* burden: Hassen's schedule at her new full-time job elsewhere conflicted with the only shifts available to PRN nurses. The hospital even told Hassen that she was eligible for re-hire if she applied. Hassen retorts that the hospital required PRN nurses to work only one shift a month, which she says she had time for. But the only shifts that the hospital had for PRN nurses conflicted with Hassen's new job. And Hassen identified no evidence that would prove that this explanation is mere pretext.

\*        \*        \*

In sum, Hassen failed to carry her *McDonnell Douglas* burdens on both of her claims. The district court correctly granted summary judgment, and we AFFIRM.

---

[28] *McDonnell Douglas*, 411 U.S. at 802.

9

No. 18-30856

KING, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that the district court appropriately entered summary judgment in favor of the hospital on Hassen's failure-to-promote and discriminatory-termination claims. But I would reverse the district court's entry of summary judgment on Hassen's failure-to-hire claim. Hassen has rebutted the hospital's proffered nondiscriminatory explanation for not hiring her by presenting evidence that the hospital's explanation is false.

In the district court, the hospital argued that Hassen did not apply for the full-time position. But the hospital has since abandoned this argument because Hassen attached a copy of her application for the full-time position to her opposition to summary judgment. "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.' . . . An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)). By demonstrating that the hospital's proffered reason was false, Hassen has raised a genuine issue of material fact sufficient to survive summary judgment. *See Caldwell v. KHOU-TV*, 850 F.3d 237, 242 (5th Cir. 2017) ("[T]he question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext." (quoting *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 646 (5th Cir. 1985), *abrogated on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993))); *see also Laxton*, 333 F.3d at 578 ("No further evidence of discriminatory animus is required because 'once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation . . . .'"

10

(omission in original) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000))).

In its reply brief below, and now on appeal, the hospital shifted its reasoning: now, the hospital agrees that Hassen applied for full-time employment, but it argues that Hassen also indicated that she would accept a PRN position. The majority accepts this explanation at face value. But in fact, the hospital's "inconsistent explanations for an employment decision 'cast doubt' on the truthfulness of those explanations." *Caldwell*, 850 F.3d at 242 (quoting *Gee v. Principi*, 289 F.3d 342, 348 (5th Cir. 2002)) (finding employee raised a genuine issue of fact regarding pretext by showing that employer's explanations had "transformed over time"). Thus, the hospital's shifting explanations for not hiring Hassen for the full-time position further support her position that there is a genuine issue of material fact as to whether the hospital's explanation was pretextual.

The majority does not address these points, instead concluding that Hassen "merely recite[d] her burden under the *McDonnell Douglas* framework" and failed to "present any new evidence or point to any evidence" in support of her position. But Hassen expressly rebutted the hospital's proffered reason by arguing that the hospital's initial explanation was false and pointing to the evidence in the record that she applied for the full-time position. She has thus met her burden to raise a genuine issue of fact regarding pretext.

For these reasons, I would conclude that Hassen has presented a fact issue sufficient to survive summary judgment on her claim for failure to hire for the full-time position, and as to that claim, I respectfully dissent.