# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
February 2, 2022

Lyle W. Cayce
Clerk

No. 21-60608

Issac Brown,

*Plaintiff—Appellant*,

*versus*

Old Dominion Freight Line, Incorporated; Steve Olander,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:19-CV-456

Before Jones, Haynes, and Costa, *Circuit Judges*.

Per Curiam:*

Issac Brown worked as truck driver for Old Dominion Freight Line, Inc., a global transportation company with a service center in Richland, Mississippi. In 2018, Old Dominion fired Brown over inconsistencies in his time reports. Brown then sued Old Dominion and one of its supervisors for

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-60608

racial discrimination and various state torts.  The district court granted summary judgment for the defendants. We AFFIRM.

I

Old Dominion has a sophisticated system for tracking its drivers' whereabouts.  Drivers clock in at the beginning of each shift by scanning their fingerprints on a biometric time clock at the service center.  Once in their assigned trucks, drivers log into an onboard recording device called the Blu system.  Blu tracks the drivers' movements in real time and automatically logs them as off duty if their trucks sit idle for more than a few minutes.  Drivers confirm their duty status in Blu manually.  They also provide more detailed reports throughout the day using handheld devices.  The company requires drivers to log certain information via the handhelds, including their driving status (i.e., "en route," "delay").

Old Dominion's drivers get two paid fifteen-minute breaks and one unpaid thirty-minute lunch break.  Drivers must always log their lunch breaks.  But there is conflicting evidence about whether and how drivers are expected to log their shorter, paid breaks.  According to management, drivers need to change their duty status for those breaks to comply with Department of Transportation regulations.  Brown, however, says that there's no need to log anything manually because Blu automatically marks time spent in a parked vehicle as off duty.  In any event, drivers are always required to update their duty status for breaks exceeding fifteen minutes.  They must also call dispatch for approval.

Brown began driving freight for Old Dominion in 2014.  A few years into his employment, Brown started to receive warnings from his supervisor, Steve Olander, about problems with his attendance and time reports.  In August 2017, Brown received a verbal warning for cancelling a shift without notice.  Three months later, he was issued a written warning for clocking in

early without authorization and not working during that time. In May 2018, Olander reprimanded Brown again—this time, for failing to record that he was delayed for hours at a customer site. Olander warned Brown that he needed to call dispatch or update his duty status for delays lasting longer than fifteen minutes because Old Dominion charges customers for those delays.

In July 2018, Brown fell ill while on duty and stopped to rest. Brown did not log the break in his handheld or notify dispatch, but his Blu time record shows that the break lasted 41 minutes. Afterwards, Brown completed two pickups and took a lunch break. Later that day, dispatch called Brown and discovered that he was running an hour late to his third and final pickup. Brown had not warned anyone about his delay, so Old Dominion had to ask the customer for an extra thirty minutes and find a driver closer by.

When Olander asked Brown about the late pickup, Brown responded that he had stopped for a restroom break. Olander then checked Brown's Blu record and saw that Brown had stopped for over thirty minutes without notifying dispatch or updating his duty status. The following Monday, Olander terminated Brown for filing a false time sheet.

Brown sued both Olander and Old Dominion in federal court, asserting claims of racial discrimination under 42 U.S.C. § 1981 and state tort violations (defamation, wrongful discharge, and tortious interference with an employment contract). The district court granted summary judgment and dismissed all of Brown's claims with prejudice.

II

Brown first challenges the dismissal of his Section 1981 claim.[1] We review the district court's grant of summary judgment de novo. *Vuncannon*

---

[1] As a preliminary matter, Brown appeals the district court's denial of his motion to strike the declaration of John Lawrence. We need not consider this issue because the

*v. United States,* 711 F.3d 536, 538 (5th Cir. 2013). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Brown asserts that Old Dominion and Olander fired him because he is black. Because Brown has not offered any direct evidence of discrimination, we apply the *McDonnell Douglas* burden-shifting framework. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). Under that framework, Brown must first establish a prima facie case of racial discrimination. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). If he succeeds, the burden shifts to the defendants to articulate a legitimate, nondiscriminatory reason for their decision to terminate Brown. *Id.* at 557. Brown then "bears the ultimate burden" of proving that defendants' proffered reason is pretext for discrimination. *Id.*

An employee who is terminated for violating a work rule can make a prima facie case of racial discrimination by showing "either that he did not violate the rule or that, if he did, white employees who engaged in similar acts were not punished similarly." *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980).

Brown is collaterally estopped from arguing that he did not violate a work rule. After Brown was terminated, he sought unemployment benefits with the Mississippi Department of Employment Security (MDES). The MDES determined that Brown did not qualify for benefits because he was fired for falsifying "company documents." In section 1981 cases, we are bound to give state agency factfinding "the same preclusive effect to which

---

Lawrence declaration did not impact the summary judgment ruling. The district court explained that it "relie[d] only on the authenticated documents, not the information Lawrence testifie[d] to in his affidavit." We do the same.

it would be entitled in the State's courts." *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986). Mississippi courts give "preclusive weight" to factual findings by the MDES. *See Cox v. Desoto County*, 564 F.3d 745, 748 (5th Cir. 2009). The MDES found that Brown was terminated for engaging in workplace misconduct. Brown could have appealed that ruling but did not. As a result, he cannot now collaterally attack the agency's finding that he violated a work rule.

Brown argues that preclusion should not apply because Old Dominion has asserted a different reason for Brown's termination. Whereas MDES found that Brown was discharged for falsifying company documents, Old Dominion maintains that it terminated Brown because his failure to accurately record his hours "resulted in his submitting false and inaccurate time records." We do not see the distinction. Both statements refer to the same act of misconduct: Brown took an unauthorized break, failed to log it, and, as a result, he was paid for time not spent working. Brown cannot dispute those facts without disturbing the agency's determination that he did, in fact, violate a work rule.

Assuming, as we must, that Brown committed a work-rule violation, Brown's prima facie case turns on whether he can show that white employees committed similar violations and were treated differently than him. The employees offered as comparators must be "similarly situated" to Brown, meaning they "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). And, critically, the comparators must have engaged in "nearly identical" conduct. *Id.* Conduct is not nearly identical if "the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment

received from the employer." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001).

Brown alleges that Old Dominion was generally more lenient with its white drivers. But he has failed to establish that any employees received better treatment "under nearly identical circumstances." *Lee*, 574 F.3d at 260; *Morris v. Town of Independence*, 827 F.3d 396, 401 (5th Cir. 2016). Brown has not shown that any white drivers kept the clock running for unauthorized breaks, misled the company about their actions, and were not disciplined when management found out. Brown identifies one driver who allegedly took unauthorized breaks, but Brown admits that he does not know whether management knew about it.[2] Brown's other comparators may have clocked out early or worked shorter hours, but Brown indicates that they did so with the company's permission. And Brown does not allege that any of the comparators' conduct made Old Dominion late for a delivery. In sum, Brown's evidence could not lead a reasonable juror to find that Brown was treated differently than white employees.

Because Brown has failed to set forth a prima facie case of racial discrimination, we need not address the parties' remaining arguments regarding pretext. *Morris*, 827 F.3d at 403. We affirm the grant of summary judgement on Brown's Section 1981 claim.

### III

Brown also challenges the district court's dismissal of his state tort claims. Again, we affirm.

---

[2] Brown identifies several other Old Dominion employees who allegedly falsified company records. But for the reasons stated by the district court, these employees were not similarly situated to Brown and are thus not adequate comparators. *See Brown v. Old Dominion Freight Line, Inc.*, 2021 WL 3362042, at *7 (S.D. Miss. July 6, 2021).

First, Brown claims that Old Dominion and Olander wrongfully discharged him without just cause. This claim fails for several reasons. For one, MDES has already determined that Brown was terminated for cause. For another, Brown is an at-will employee, so his employer did not need cause to terminate him. *See Perry v. Sears, Roebuck & Co.*, 508 So. 2d 1086, 1088 (Miss. 1987). Brown attempts to rely on Mississippi's "narrow public policy exception," which permits at-will employees to bring wrongful-discharge claims if they are terminated for refusing "to participate in an illegal act." *McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603, 607 (Miss. 1993). But no one at Old Dominion ever *asked* Brown to do anything illegal, so the exception does not apply.

Brown also claims that Olander is liable for defamation and tortious interference because he lied to others about Brown's "stealing time." But these claims fail too. As the district court explained, Olander is protected by Mississippi's qualified privilege for employer speech. *Brown*, 2021 WL 3362042, at *9. To prove defamation, Brown must overcome that privilege by showing "malice, bad faith, or abuse." *Inland Fam. Prac. Ctr., LLC v. Amerson*, 256 So. 3d 586, 590 (Miss. 2018). Brown's tortious interference claim similarly requires him to show that Olander acted with malice. *McClinton v. Delta Pride Catfish, Inc.*, 792 So. 2d 968, 976 (Miss. 2001). Brown has not established that Olander acted with malice. He concedes that Olander believed Brown had stolen time, and provides no evidence that Olander acted in bad faith when he told other employees about it. That knocks out both the defamation and tortious interference claims.

\* \* \*

The judgment of the district court is AFFIRMED.