# United States Court of Appeals for the Fifth Circuit

No. 22-10190
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
November 18, 2022

Lyle W. Cayce
Clerk

Amegy Bank of Texas,

*Plaintiff—Appellee*,

*versus*

CGI Franchise Systems, Incorporated; Roger MacDonell,

*Defendants Appellees*,

*versus*

Sharon MacDonell,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:20-CV-375

Before Stewart, Duncan, and Wilson, *Circuit Judges*.

No. 22-10190

Per Curiam:*

In this interpleader action, Sharon MacDonell appeals the district court's grant of summary judgment for her ex-husband, Roger MacDonell, and his company, CGI Franchise Systems, Incorporated ("CGIFSI").[1] Because the district court correctly held that CGIFSI is the owner of the interpleaded funds and Roger has authority over CGIFSI as its sole shareholder, we affirm.

## I.    Background

Sharon and Roger married in California in 1992 and later moved to France in 2006. The couple eventually initiated separate divorce proceedings—Sharon in California and Roger in France—in 2010. A family law court in France ("the French court") dissolved the marriage and began to identify and divide the assets between Sharon and Roger under California's community property laws. This process involved the French court's evaluation of Roger's various business interests, including CGIFSI and funds it held in a bank account ("the Account") at Amegy Bank of Texas ("Amegy"). Ultimately, the French court determined that California law preserved a portion of CGIFSI's share value to Sharon. However, it clearly distinguished between Sharon's interest in the value of CGIFSI's shares or stocks, and her interest in the assets of the company. It also explained that Sharon had no business in the affairs or operations of CGIFSI. Specifically, it noted that because Sharon had "no rights pertaining to the operation of CGIFSI" she was not "justified in calling into question the transactions carried out on the accounts of the company."

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

[1] CGIFSI is incorporated under the laws of Texas, with its principal place of business in Dallas.

No. 22-10190

After the divorce proceedings, Roger contacted Amegy on CGIFSI's behalf to transfer funds from the Account to another account he owned. Before Amegy could complete the transfer, it received a letter from Sharon threatening legal action if it proceeded with the transaction. In response, Amegy filed an interpleader action in federal district court seeking an order: (1) discharging Amegy from all legal liability for any claim related to the Account; (2) reasonable attorney's fees; and (3) an order to deposit the balance of the disputed funds in the district court's registry. Roger and CGIFSI maintained that CGIFSI was the true owner of the Account, while Roger had authority over CGIFSI. Therefore, Roger's decision to transfer the funds was just his exercise of control over the operations of CGIFSI. Sharon, however, claimed that she was entitled to a portion of the Account pursuant to the French court's divorce judgment and that Roger was transferring the funds to ensure she never received her portion. She maintained that the French court determined that both CGIFSI and its assets were community property to be distributed in accordance with California law.

Roger and CGIFSI filed for summary judgment, which the district court ultimately granted. It observed that Roger was clearly the true owner of the disputed funds in the Account and was also authorized to manage those funds on CGIFSI's behalf. The district court highlighted that the French court was careful in ensuring it did not classify CGIFSI's assets as community property, instead distinguishing questions of control or ownership of CGIFSI from its value. The district court held that the divorce judgment expressly left control of CGIFSI, including its assets, to Roger. The district court also noted Sharon's concerns "that Roger may move assets beyond her reach before the French divorce court issues an enforceable judgment dividing the marital property," but declined to hold a trial on equitable grounds when the French court had the power and jurisdiction to

do the same. Ultimately, the district court held that "CGIFSI owns the Account and the interpleaded funds," and Roger, as the sole shareholder, was authorized to act on CGIFSI's behalf and transfer the funds where he saw fit. It granted Roger's and CGIFSI's motion for summary judgment. Sharon timely appealed.

On appeal, Sharon primarily argues that the district court erred in concluding: (1) that the Account is not community property; (2) that Roger had the authority to transfer funds in CGIFSI's account; and (3) that Roger had superior claim to the interpleaded funds in the Account. Alternatively, she contends that the district court erred in failing to provide equitable relief because it declined to stop Roger from devaluing CGIFSI by depleting its assets.

## II.    STANDARD OF REVIEW
### A. Summary Judgment

"We review the grant of a motion for summary judgment de novo, applying the same standard as the district court." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). We "view the evidence and draw all justifiable inferences in favor of the nonmovant," however, "the nonmovant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial." *Hassen v. Ruston La. Hosp. Co., LLC*, 932 F.3d 353, 355–56 (5th Cir. 2019) (quotation marks omitted). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." *Jackson*, 602 F.3d at 377. We "may affirm the district court's decision on any basis presented to the district court." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2019).

No. 22-10190

## B. *Interpretation of Foreign Law & Orders*

"The content of foreign law is a question of law and is subject to de novo review." *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 713 (5th Cir. 1999).

## III.    Discussion

### A. *The Owners of the Account*

The "legal titleholder to a bank account is not always the owner of its contents." *In re IFS Fin. Corp.*, 669 F.3d 255, 262 (5th Cir. 2012) (applying Texas law). To ascertain the true owner of a bank account, we must look at the "individual facts of each case." *Id.* Moreover, we have emphasized that "control over funds in an account is the predominant factor in determining an account's ownership." *Id.* (citing *In re Southmark*, 49 F.3d 1111, 1116–17 (5th Cir. 1995).

Sharon first argues that Roger is not authorized to transfer funds from the Account because: (1) he is not the true owner of the Account and (2) California law—which the French court determined governed their divorce—forbids him from transferring the funds. Regarding ownership of the Account, she cites numerous bankruptcy cases, arguing that whether Roger is the "legal owner" or "true owner" of the Account is a fact-intensive inquiry not fit for summary judgment. *See*, *e.g.*, *In re IFS Fin. Corp.*, 417 B.R. 419, 435 (Bankr. S.D. Tex. 2009) (holding that the "legal title owner is not

always the true owner").[2] Moreover, she highlights that this court has held that true ownership of a bank account is "ultimately a fact-based inquiry that will vary according to the peculiar circumstances of each case." *In re IFS Fin. Corp.*, 669 F.3d at 262. Accordingly, she asserts that a trial is the only appropriate vehicle for determining true ownership of the Account. Alternatively, she maintains that even if Roger is the true owner of the Account, the district court erred in permitting him to transfer funds in violation of numerous California divorce laws.[3]

Here, the district court correctly determined that Roger was the true owner of the Account and enjoyed the right to transfer CGIFSI's funds as its sole shareholder and director. Sharon correctly contends that our inquiry into the Account's ownership is "fact-intensive." She also persuasively argues that Roger is not the legal owner of the Account. However, she misunderstands the conclusions of the district court. The district court did not hold that Roger was the legal owner. Instead, it reasoned that "CGIFSI [was] the undisputed legal owner and titleholder of the Account," but that Roger was authorized to manage CGIFSI as its only shareholder and director.

---

[2] Sharon also relies on the following out of circuit cases: *In re Ulz*, 388 B.R. 865, 868 (Bankr. N.D. Ill. 2008) (holding that "[a] person may have an interest in property— and may even be considered the owner—although someone else has title"); *In re Johnson*, 232 B.R. 735, 739 (Bankr. C.D. Ill. 1999) (noting that "the contract between the bank and the depositor" is not dispositive in determining the true owner of an account); *In re Estate of Muhammad*, 520 N.E.2d 795, 797 (Ill. App. Ct. 1987) (holding that "true ownership of a deposit may be proved to be in another than the person in whose name it is made, and courts may use their equitable powers to determine the beneficial or equitable owner of an account") (quotation marks omitted).

[3] *See, e.g.*, CAL. FAM. CODE § 2040(a)(2)(A) ("restraining both parties from transferring, encumbering, hypothecating, concealing, or in any way disposing of, any property, real or personal, whether community, quasi-community, or separate, without the written consent of the other party or an order of the court, except in the usual course of business or for the necessities of life . . .").

Effectively, the district court determined that Roger was the "true owner" of the Account by virtue of his authority over CGIFSI. We agree.

The district court's conclusion aligns perfectly with this circuit's precedent. In *In re IFS Financial Corporation*—a case both parties rely extensively on—the bankruptcy court held that "the true owner of an account is measured by possession and control rather than bare legal title." 417 B.R. at 435 (citing *In re Southmark Corp.*, 49 F.3d at 1116–17). Here, the record demonstrates that Roger enjoys complete control over CGIFSI as its sole shareholder and president. The record similarly establishes that CGIFSI is the undisputed legal owner of the Account, having opened and maintained it since its inception. Consequently, the record supports the district court's conclusion that Roger has "possession and control" of the Account through CGIFSI. *In re IFS Fin. Corp.*, 417 B.R. at 435. Thus, he is validly authorized to transfer CGIFSI's funds through Amegy so long as "the funds are not community property."

### B.  The French Court's Determination on CGIFSI

"In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." FED. R. CIV. 44.1. "Differences of opinion regarding the content, applicability, or interpretation of foreign law do not create a genuine issue as to any material fact under Rule 56." *Gonzalez-Segura v. Sessions*, 882 F.3d 127, 130 (5th Cir. 2018) (quotation marks omitted).

Sharon argues that the district court incorrectly interpreted the French court's divorce judgment which led the district court to erroneously hold that CGIFSI's assets are not community property. She contends that if CGIFSI's assets are community property, then we must prevent Amegy from dividing the assets before the French court issues its ruling on how those

No. 22-10190

assets should be split. The district court rejected Sharon's contention, instead holding that "CGIFSI's assets are not community property at all according to the French court judgment." We agree.

As the district court aptly recognized, the French court's ruling was clear in distinguishing between Roger's control of CGIFSI's assets and Sharon's entitlement to its stock value. Specifically, the French court noted Roger's request that it address whether "CGIFSI and Roger [] are both free to transfer assets under their ownership and control without restriction or legal hindrance." It concluded that:

> The dispute concerning the liquidation of the patrimonial rights of the parties has to do, not with the issue of the parties' social rights over [CGIFSI], but with the separate or common nature of the value of the shares.

> Therefore, these decisions have no impact on the separate or common nature of [CGIFSI], since by virtue of the distinction between title and finance, Roger['s] right to [CGIFSI] can be separate whereas the company's shares can become common property.

Nothing in the French court's judgment creates ambiguity or uncertainty regarding its determinations above. Indeed, the French court declared that CGIFSI's "shares can become common property," and that there be "no impact on the . . . nature" of the company. Thus, the French court unequivocally separated ownership of CGIFSI's "title" (the company's stock or share value) from its "finance" (operational control and assets).

In sum, Sharon fails to present any record evidence that casts doubt on Roger's ownership of CGIFSI or his claim to the Account. She is similarly unpersuasive in her attempt to reanalyze the French court's divorce judgment and its decision regarding CGIFSI's assets. At best, she proffers an alternative interpretation of the French court's order, and that fact alone is

8

No. 22-10190

not enough to survive summary judgment. *Gonzalez-Segura*, 882 F.3d at 130. Absent a genuine issue of material fact, we affirm the district court's grant of summary judgment in favor of Roger. *See* Fed. R. Civ. P. 56(a).

## *C. Equitable Relief*

Finally, Sharon contends that the district court erred in denying her equitable relief because it failed to enjoin Roger from transferring the Account's funds, which will permit him to deplete CGIFSI's value. We decline to address this argument, however, because the proper venue for addressing this concern is the French court, which explicitly addressed Sharon's apprehension and undoubtedly has jurisdiction over Roger and his personal property in these divorce proceedings. The French court ordered Roger to promptly provide information regarding the assets of all his companies, including CGIFSI, as part of the ongoing liquidation of assets. Moreover, the order prohibited Roger from making unsanctioned voluntary concealments of his companies' assets.[4] Accordingly, we hold that Sharon's arguments that Roger violated these orders should be addressed by the court that issued them.

## IV.    Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment.

---

[4] Specifically, the French court held that "unless Roger MACDONNELL's deliberate concealments are sanctioned, all community assets must be shared by half between the parties."