**Reversed and Rendered and Memorandum Opinion filed July 12, 2022.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-20-00688-CV

_____

**THE CITY OF HOUSTON, Appellant**

**V.**

**MADISON T. GARNER, Appellee**

**On Appeal from the 190th District Court
Harris County, Texas
Trial Court Cause No. 2018-50114**

## MEMORANDUM OPINION

In this interlocutory appeal, appellant The City of Houston ("the City") appeals the denial of its motion for summary judgment asserting governmental immunity in the employment discrimination lawsuit brought by appellee Madison T. Garner ("Garner"). *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(5) (authorizing appeal from interlocutory order that denies a motion for summary judgment based on an assertion of immunity). In two issues, the City argues the trial court erred in denying its motion because Garner did not present any evidence to

establish a prima facie case of (1) race discrimination, and (2) a hostile work environment. We reverse the trial court's order and render judgment granting the City's motion for summary judgment and dismissing Garner's claims.

## I. BACKGROUND

On July 20, 2015, Garner was hired as cadet by the Houston Fire Department ("HFD"). Garner was first placed at HFD's Training Academy, where he received theoretical or classroom training under the supervision of Captain Zapata. After graduating from the Training Academy in March 2016, Garner was promoted to a probationary firefighter and placed in HFD's Station 8, where he was to complete the hands-on or practical training portion of his training under the supervision of Captain David Paige ("Captain Paige") and Captain Brandon Everette ("Captain Everette"). To successfully complete his practical training, and thus his probationary period, Garner was required to complete three phases of training, including an emergency medical technician ("EMT") credentialing process. Garner's probationary period was scheduled to end on October 20, 2017.[1]

On September 27, 2016, Assistant Fire Chief Kevin Alexander ("Alexander") wrote a letter to the Executive Assistant Fire Chief, Richard Mann ("Mann"), recommending Garner's termination. Alexander's letter stated that Garner "has demonstrated a pattern of failure during his evaluation periods and has failed to successfully meet the minimum requirements outlined in the Houston Fire Department's Probationary Firefighter Guideline which is a minimum requirement of his employment." Alexander further wrote that Garner "Failed to successfully pass Performance Standard 1 (Turnout Evolution) in the allotted time"; "Initially

---

[1] In his petition, Garner states that he was terminated "a week before finishing his 15-month probationary period." However, the record indicates that Garner was terminated on October 13, 2016, and that his probationary period ended approximately one year later, on October 20, 2017.

failed Phase 2 final examination and had to retest, which he successfully passed"; "Failed to successfully complete the MES EMT Credentialing process";[2] and "Failed Phase 3 final examination requiring a retest."[3] Finally, Alexander noted that these facts indicated a violation of a "Department/City" policy, which provides that "A recommendation for termination may be submitted to the Fire Chief at any time the Probationary Firefighter demonstrates a pattern of failure during evaluation periods."

On October 13, 2016, the interim Fire Chief, Rodney West ("Chief West"), terminated Garner's employment based on "a pattern of low performance and repeated failures" and "his failure to fulfill the requirements of a Probationary Firefighter." On January 13, 2017, Garner filed a charge of discrimination[4] with the Texas Workforce Commission ("TWC"), which stated:

> On October 13, 2016, my employment was terminated by Chief Richard Mann after presenting me with a letter stating that I failed to meet the job requirements, failed to meet the required skills and cognitive requirements of my position, and alluded that I had displayed a pattern of low performance and repeated failures. Had my evaluations been collected, and done just as the other probationary fire fighters, I would have continued my employment.
>
> Looking back at my treatment, I was singled out, abused, harassed and then terminated because Captain Zapata and Captain Paige have a

---

[2] We note that there is evidence in the record indicating that Garner met the number of required EMT assessments necessary for his credentialing as an EMT through the City. Captain Paige testified in his deposition that he did not believe some of Garner's successful evaluation forms were accurate.

[3] The record contains a portion of the relevant policies regarding testing of a probationary firefighter, which provides "Failure of an exam will constitute a retest within two weeks from the date of the failure" and that "Any Probationary Firefighter that fails any Phase test and retest will be recommended for termination through the chain of command to the Fire Chief." It is undisputed that Garner passed Phase II and Phase III examinations on his retests.

[4] The record indicates that Garner amended his charge on May 7, 2018; however, the amended charge does not appear in the clerk's record on appeal.

systematic way to eliminate Black firefighters. I was told that it is known that Black probationary firefighters do not succeed at Station 8.

I believe that I was discriminated against by being harassed and discharged because of my race (Black) and retaliated against for my grievances in violation of Title VII of the Civil Rights Act of 1964, as amended, I also believe that I received low scores on my evaluation, which has a negative impact on my employment, due to my medical shaving condition, in violation of the America's [sic] with Disabilities Act of 1990, as amended.

On July 28, 2018, Garner filed suit against the City, asserting that he was discriminated against when he was terminated based on his race and that he was subject to a hostile work environment. In his petition, Garner stated that "Station 8 was reputed for discriminating against Black cadets and making them resign." Garner further stated that he was "terminated, a week before finishing his 15-month probationary period[,]" and that he "was terminated for [alleged] 'repeated failures.'"

The City filed a traditional motion for summary judgment arguing that it was immune from Garner's suit because Garner could not establish a prima facie case of race discrimination or a hostile work environment. As to Garner's claim of race discrimination, the City argued that (1) Garner was not qualified for the position; (2) Garner could not identify other similarly situated employees who were not in Garner's protected class and treated more favorably; (3) the City's non-discriminatory reasons for Garner's termination were true and credible; and (4) Garner could not show that the legitimate non-discriminatory reasons for Garner's termination were a pretext for race discrimination. As to Garner's hostile-work-environment claim, the City argued that: (1) Garner failed to exhaust his administrative remedies for all events prior to July 17, 2017, which included Garner's complaints regarding events that occurred while he was in the academy; (2) Garner's allegations did not amount to conduct that was severe or pervasive

4

enough to create an objectively hostile work environment; and (3) none of the actions complained of was based on Garner's race nor was there any evidence to show that Garner's race was a motivating factor in the complained-of events. In support of its motion, the City attached the depositions of Garner, Captain David Paige, and Chief West, as well as Garner's termination letter and Garner's discrimination charge with the Texas Workforce Commission ("TWC").

Garner filed a response and argued that he established a prima facie case of discrimination and that fact issues existed regarding pretext, but he did not respond to the City's motion as to his hostile-work-environment claim. In his response, Garner argued for the first time that his case was not based on his termination but rather the City's failure to hire him. As a result, according to Garner, the city's motion for summary judgment articulated the wrong legal elements and prima facie paradigm. Garner attached to his response various documents related to his employment with the City and portions of the depositions of Garner, Captain Paige, Captain Everette, and Chief West.

On September 18, 2020, following a hearing, the trial court denied the City's motion for summary judgment. This interlocutory appeal followed. *See id.*

## II.  DISCUSSION

In its first issue, the City argues that Garner presented no evidence to establish a prima facie case of race discrimination or to show that the City's proffered reasons for his termination were a pretext for race discrimination, and thus, the City retained its governmental immunity. In its second issue, the City argues that Garner presented no evidence of a race-based hostile work environment, and accordingly, the trial court should have granted the City's motion for summary judgment.

5

## A.    STANDARD OF REVIEW

We review the trial court's ruling on a summary judgment motion de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). To prevail on a traditional motion for summary judgment, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). In reviewing the grant of a traditional motion for summary judgment, we consider all the evidence in the light most favorable to the nonmovant, indulging all reasonable inferences in favor of the nonmovant, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985); *see* Tex. R. Civ. P. 166a(c). A defendant moving for summary judgment must either (i) conclusively negate at least one element of the plaintiff's theory of recovery or (ii) plead and conclusively establish an affirmative defense. *Centeq Realty v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *see* Tex. R. Civ. P. 166a(c).

## B.    UNLAWFUL EMPLOYMENT PRACTICES

The Texas Commission on Human Rights Act (TCHRA) prohibits race discrimination by employers. *See* Tex. Lab. Code Ann. § 21.001, 21.051. As relevant to this case, an employer commits an unlawful employment practice if, because of race, the employer fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment. *Id.* § 21.051(1).

An "employer" includes a county, municipality, state agency, or state instrumentality, regardless of the number of individuals employed. *Id.* § 21.002(8)(D). Because the TCHRA is modeled after federal rights law, we may look to analogous federal precedent for guidance. *Hoffman-La Roche, Inc. v.*

6

*Zeltwanger*, 144 S.W.3d 438, 446 (Tex. 2004); *see* Tex. Lab. Code Ann. § 21.001.

## C.  WAIVER OF IMMUNITY

Governmental units, like the City, are immune from suit unless the State consents to the lawsuit. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 763 (Tex. 2018); *City of Houston v. Williams*, 216 S.W.3d 827, 828–29 (Tex. 2007) (per curiam). "The TCHRA waives immunity, but only when the plaintiff states a claim for conduct that actually violates the statute." *Clark*, 544 S.W.3d at 770.

Courts consider TCHRA claims only after the plaintiff has exhausted his administrative remedies. *Hoffman-La Roche, Inc.*, 144 S.W.3d at 446. To meet the exhaustion requirement, a plaintiff must file a charge of discrimination with the federal Equal Employment Opportunity Commission (EEOC) or the TWC within 180 days of the alleged discriminatory employment action. *See* Tex. Lab. Code Ann. §§ 21.201(a), (g), 21.202; *Czerwinski v. Univ. of Tex. Health Sci. Ctr.*, 116 S.W.3d 119, 121 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). The plaintiff's administrative remedies are exhausted when the plaintiff is entitled to a right-to-sue letter. *See* Tex. Lab. Code Ann. §§ 21.208, 21.252.

## D.  BURDEN-SHIFTING FRAMEWORK

To establish unlawful discrimination under the TCHRA, a plaintiff may rely on either direct or circumstantial evidence. *Clark*, 544 S.W.3d at 782. A case based on circumstantial evidence is referred to as a "pretext" case. *See Quantum Chem. Co. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001) (per curiam). In a pretext case, the plaintiff's ultimate goal is to show that the employer's stated reason for the adverse action was a pretext for discrimination. *Id.*

When a plaintiff relies on circumstantial evidence to establish a discrimination

7

claim, we follow the burden-shifting framework the United States Supreme Court established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Tex. Tech Univ. Health Scis. Center El-Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020); *Clark*, 544 S.W.3d at 764, 782. Under this framework: (1) the plaintiff must first create a presumption of illegal discrimination by establishing a prima facie case; (2) the defendant must then rebut that presumption by producing evidence of a legitimate, non-discriminatory reason for the employment action; and (3) the plaintiff must then overcome the rebuttal evidence by producing evidence that the defendant's stated reason is a mere pretext. *Flores*, 612 S.W.3d at 305; *Clark*, 544 S.W.3d at 782.

The plaintiff's burden at this stage of the proceeding is not onerous. *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 228 (2015); *Garcia*, 372 S.W.3d at 634 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Nevertheless, if a plaintiff fails to establish a prima facie case against a governmental unit or overcome the rebuttal evidence, then the trial court lacks jurisdiction and must dismiss the case. *See Garcia*, 372 S.W.3d at 635; *Miranda*, 133 S.W.3d at 225–26. "Under the framework, the employee bears the initial burden to establish a prima facie case of discrimination by pleading the basic facts that make up the elements of the claim." *Deville v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 634 S.W.3d 324, 331–32 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (citing *Garcia*, 372 S.W.3d at 634, 637).

## E.    PRIMA FACIE CASE

### 1. Race Discrimination

To establish a prima facie case of race discrimination, the employee must show that he is (1) a member of a protected class; (2) was qualified for his position; (3) suffered an adverse employment action; and (4) was replaced by someone outside

his protected class, or that others similarly situated outside the protected class were treated more favorably. *Mackey v. Enventives, L.L.C.*, 802 Fed. App'x 835, 836–37 (5th Cir. 2020) (per curiam); *Alief Indep. Sch. Dist. v. Brantley*, 558 S.W.3d 747, 757 (Tex. App.—Houston [14th Dist.] 2018, pet. denied); *Donaldson v. Tex. Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 434–35 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008)).

Here, Garner did not allege in his petition or plead any facts that he was replaced by someone outside his protected class. *See Garcia*, 372 S.W.3d at 637 ("Chapter 21 of the Labor Code waives immunity from suit only when the plaintiff actually states a claim for conduct that would violate the TCHRA."); *Deville*, 634 S.W.3d at 331–32 ("[W]e conclude that [appellant] was required to plead facts establishing a prima facie case . . . ."). Instead, Garner's petition alleged that he was treated differently and terminated because of his race. Thus, to defeat the City's motion for summary judgment, Garner had to raise a fact issue as to whether other similarly situated probationary firefighters outside of his protected class were treated more favorably. *See Hassen v. Ruston La. Hosp. Co.*, 932 F.3d 353, 358 (5th Cir. 2019). As detailed below, Garner failed to do so.

### a. No Similarly Situated Employees

Because it is dispositive, we address the City's argument that its immunity was not waived because Garner failed to raise a fact issue as to whether others similarly situated outside the protected class were treated more favorably.

"Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 584 (Tex. 2017) (quoting *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005) (per curiam)). "The

situations and conduct of the employees in question must be 'nearly identical.'" *Id.* (quoting *AutoZone, Inc.*, 272 S.W.3d at 594) (citation omitted); *see also Edwards v. Grand Casinos of Miss., Inc.*, 145 Fed. App'x 946, 948 (5th Cir. 2005) (per curiam) (noting that as to the similarly situated requirement, circumstances surrounding the compared employees must be "nearly identical").

Captain Paige testified that they are only assigned one probationary fire fighter at a time and Captain Everett testified he believed Garner was the only probationary firefighter at Station 8 during the relevant time frame, but Captain Everett was not "100 percent" certain. Garner testified there were "around" five other probationary fire fighters at Station 8. Garner, however, failed to provide any details regarding these additional probationary fire fighters at Station 8, including whether they were outside his protected class and whether those outside his protected class were treated more favorably. Therefore, we conclude that Garner failed to raise a fact issue regarding a prima facie case of race discrimination. *See AutoZone, Inc.*, 272 S.W.3d at 594 ("Employees with different responsibilities, supervisors, capabilities, work rule violations, or disciplinary records are not considered to be 'nearly identical.'"); *Monarrez*, 177 S.W.3d at 917; *Greathouse v. Alief Indep. Sch. Dist.*, 17 S.W.3d 419, 426 (Tex. App.—Houston [1st Dist.] 2000, no pet.) ("Summary judgment for the defendant is proper when a plaintiff claiming race discrimination presents only conclusory allegations, improbable inferences, unsupportable speculation, or subjective beliefs and feelings."). Because Garner pleaded his cause of action alleging race discrimination claiming that he was terminated based on his race and treated less favorably because of his race, his failure to raise a fact issue as to whether other similarly situated probationary firefighters outside of his protected class were treated more favorably prevents a waiver of the City's immunity. *See Garcia*, 372 S.W.3d at 637; *Hassen*, 932 F.3d at 358; *Brantley*,

558 S.W.3d at 757; *Deville*, 634 S.W.3d at 331–32. Accordingly, we conclude the trial court erred when it denied the City's motion for summary judgment as to Garner's race discrimination claim. *See* Tex. R. Civ. P. 166a(c).

Garner argues on appeal that the correct paradigm is one establishing a prima facie case for an employer's failure to hire.[5] However, nowhere in his petition did Garner argue or allege that the City failed to hire him. "The Texas Supreme Court has held that the TCHRA waives a governmental employer's immunity for TCHRA claims asserted against the employer, 'but only when the plaintiff states a claim for conduct that actually violates the statute.'" *Deville*, 634 S.W.3d at 331 (quoting *Clark*, 544 S.W.3d at 770). Because Garner did not plead that the City failed to hire him, we are compelled to reject Garner's argument that the correct elements of his prima facie case are those for a failure to hire. *See Hassen*, 932 F.3d at 358 ("Hassen would not be able to make a prima facie showing on the failure to promote: Hassen didn't allege that the hospital treated her differently from white nurses seeking promotions."); *MedStar Funding, LC v. Willumsen*, No. 14-20-00312-CV, __ S.W.3d __, __, 2022 WL 1151145, at *2 (Tex. App.—Houston [14th Dist.] Apr. 19, 2022, no pet. h.) ("A defendant moving for summary judgment is required to meet the plaintiff's causes of action as they are pleaded and to demonstrate that the plaintiff cannot prevail on those claims."); *see also Deville*, 634 S.W.3d at 332 ("We conclude that Deville was required to plead facts establishing a prima facie case of disability discrimination in order to demonstrate the trial court's subject-matter jurisdiction over his discrimination claim . . . ."). We sustain the City's first issue.

---

[5] The two cases cited by Garner for support of this proposition concerned a failure to promote. *See Blow v. City of San Antonio, Tex.*, 236 F.3d 293, 296 (5th Cir. 2001); *Elgaghil v. Tarrant Cnty. Junior Coll.*, 45 S.W.3d 133, 139 (Tex. App.—Fort Worth 2000, pet. denied).

## 2. Hostile Work Environment

### a. Applicable Law

A hostile work environment claim "entails ongoing harassment, based on the plaintiff's protected characteristic, so sufficiently severe or pervasive that it has altered the conditions of employment and created an abusive working environment." *Anderson v. Hous. Cmty. Coll. Sys.*, 458 S.W.3d 633, 646 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *see Meritor Savs. Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986); *Brantley*, 558 S.W.3d at 757. The elements of a prima facie case of hostile work environment are: (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on the protected characteristic; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Brantley*, 558 S.W.3d at 757; *Anderson v. Hous. Cmty. Coll. Sys.*, 458 S.W.3d 633, 646 (Tex. App.—Houston [1st Dist.] 2015, no pet.). An employee complaining of harassment by a supervisor need only show the first four elements. *Brantley*, 558 S.W.3d at 757.

In determining whether a hostile work environment exists, courts look to the totality of the circumstances. *See Waffle House, Inc. v. Williams,* 313 S.W.3d 796, 806 (Tex. 2010). Although no single factor is required, courts look to (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating as opposed to a mere offensive utterance; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether the complained of conduct undermines the plaintiff's workplace competence. *Id.* Conduct must be extreme enough to amount to a change in the terms and conditions of employment. *Id.* Furthermore, "the conduct must be both objectively offensive,

meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Minnis v. Bd. of Sup'rs of La. State Univ. & Agr. & Mech. Coll.*, 620 Fed. App'x 215, 221 (5th Cir. 2015) (per curiam) (quoting *Stewart v. Miss. Transp. Comm'n,* 586 F.3d 321, 330 (5th Cir. 2009)).

### b. Conduct Complained of Did Not Affect A Term, Condition, or Privilege of Garner's Employment

Because it is dispositive, we address the City's argument that the conduct Garner complains of did not affect a term, condition, or privilege of his employment.

Garner complains of incidents at both the Training Academy and at Station 8 as bases for his hostile-work-environment claim. While at the academy, Garner complains that he was ordered by Captain Zapata to move a pallet of bricks from one area to another area about forty feet apart because Garner did not shave his facial hair close enough. In his deposition, Garner testified that he was required to have a clean shave of his facial hair so that his mask could seal, per HFD's policy; that Captain Zapata did not believe he was clean shaven on that particular day; and that he was ordered to move the pallets as a result. Garner testified that after the incident when he was asked to move the bricks, he presented Captain Zapata with documentation of a skin condition that prevented him from shaving close to his skin, and that another individual who was not African American was also told to move bricks at the same time as Garner for not shaving as well.

Garner also complains that his vehicle was broken into while he was at the Training Academy and that someone stole his "ID, credit card, some clippers, a hoodie, [and] a cell phone." Garner testified in his deposition that Captain Zapata gave Garner's ID and credit card to Garner "during the middle of some training." According to Garner, he does not know why his vehicle was broken into or who

13

broke into his vehicle. Finally, Garner alleged that Zapata tried to derail Garner's graduation from the academy by falsely claiming that Garner needed more volunteer hours the day before the graduation.

As to Garner's time at Station 8, he complains of the following incidents: Captain Paige and Captain Everett told Garner that "due to [Garner's] education he was not a good fit for the Fire Department and he should seek employment elsewhere in areas of employment that were more suited for his educational background"; Captain Paige also made "derisive comments" to Garner to humiliate him by telling Garner that Captain Paige would be embarrassed if Garner went to a different station and firefighters learned that Garner previously worked under Captain Paige; Garner was forced to run from 9:00 a.m. to 3:00 p.m. for being late and that running is a common punishment at the academy for being late; Garner was once asked to work out in full gear, outdoors, during a heat advisory, and Captain Paige told him it was retribution for a comment Garner made about Garner having more energy than the other firefighters at Station 8; his evaluations were not processed like everybody else's; Captain Paige purposefully rated Garner below a minimum passing score; and Captain Paige told Garner he failed the Turnout Performance Standard.

Viewing the totality of the circumstances, we conclude that the conduct alleged by Garner, even if true, was not extreme and did not affect the terms and conditions of employment. *See Jackson v. Honeywell Intern., Inc.*, 601 Fed. App'x 280, 287–88 (5th Cir. 2015); *Ramsey*, 286 F.3d at 268; *Brantley*, 558 S.W.3d at 758; *see, e.g.*, *Parker*, 484 S.W.3d at 198 (concluding that conduct was not severe or pervasive when racially charged comments were made and plaintiff "was blamed for numerous pharmacy problems that were unrelated to his performance, required to improperly write up his employees, badgered about attendance and tardiness, screamed and yelled at in front of his employees, written up for poor performance,

14

had his performance evaluation lowered, and was scrutinized, micro-managed and constantly criticized to the point where it made him ill"); *Kang v. Bd of Supervisors of La. State Univ.*, 75 Fed. App'x 974, 975–77 (5th Cir. 2003) (concluding that allegations including poor performance evaluation; being "written up" for "unacceptable conditions" in one of plaintiff's research areas; receiving less-than-average pay raise; and being criticized at a faculty meeting in front of peers were not sufficiently severe or pervasive to alter the conditions of employment and create a hostile work environment); *see also Okeke v. Adm'rs of Tulane Educ. Fund*, No. 21-30451, 2022 WL 1025991, at *5–6 (5th Cir. Apr. 6, 2022) (per curiam) ("[W]orking a hard schedule, being scolded as part of a group for not being a team player regarding scheduling, and having someone forget to include her or say her name on a couple occasions are neither severe nor pervasive conduct in the context of a rigorous four-year combined residency program."); *Minnis*, 620 Fed. App'x at 221 ("Based on the totality of the circumstances, the combination of alleged acts does not constitute a hostile work environment because he has not shown that the acts were 'sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment.'"). Accordingly, the trial court erred in denying the City's motion for summary judgment as to Garner's hostile-work-environment claim. *See Brantley*, 558 S.W.3d at 758.

We sustain the City's second issue.

### III. CONCLUSION

We reverse the trial court's order and render judgment granting the City's motion for summary judgment and dismissing Garner's claims.


/s/    Margaret "Meg" Poissant
        Justice


Panel consists of Justices Jewell, Bourliot, and Poissant.

16